180 P.2d 580

**INDUSTRIAL COMMISSION v. MEDDOCK.**

No. 4953.

Supreme Court of Arizona.

May 19, 1947.

H. S. McCluskey, of Phoenix (John R. Franks, of Phoenix, of counsel), for appellant.

Crawford & Baker, of Prescott, for appellee.

STANFORD, Chief Justice.

Appellee is the owner of certain sand rock quarries in Northern Arizona and had entered into individual contracts for the quarrying of said stone, and doing other work in connection therewith. The Industrial Commission of Arizona proposed to classify the men doing the actual quarrying as "employees," appellees having classified them as "independent contractors" thus avoiding, among other things, having to pay premiums on these men for workmen's compensation insurance.

Upon the proposal to make such classification appellee demanded a formal hearing before the Industrial Commission of Arizona, and at the conclusion it was held that said men were the employees of appellee and liability of appellee for premiums on workmen's compensation insurance was adjusted in accordance therewith. Petition for a rehearing of said order was denied by appellant.

Before the Industrial Commission counsel for the respective parties stipulated that the issues there presented might be determined on appeal to the Superior Court on the record made before the Commission. On trial the Superior Court entered an order setting aside the findings of fact, conclusions of law and order of the Commission wherein the Commission determined that the quarrymen were not independent contractors, and pursuant to said order, entered a judgment in favor of Grand Canyon Quarries from which order and judgment this appellant appeals.

Appellant offers but a single assignment of error which is as follows:

"The court erred in exceeding its jurisdiction and substituting its opinion of the 'Status' of the quarry workers for that of the appellant; and entering its order, setting aside the acts of appellant; and entering judgment pursuant thereto."

The terms governing the employment of the quarrymen are set forth in a contract which must be signed by those seeking such work. The contract was a uniform one, the only thing to be filled in being the date, names, residence, the per cent of the total rock quarried which is to be building stone and the per cent which is to be thick flagstone. The person to do the work is to be paid, under the contract, $6 per ton for first grade flagstone, etc; $3.50 per ton for thick flagstone; and $2 per ton for building stone. Other parts of the contract pertinent in this case are as follows:

" * * * that the second party enter upon said claim or claims and mine and quarry flagstone and building rock therefrom as an independent contractor. * * *"

"It is distinctly understood and agreed that the party of the first part (meaning the Grand Canyon Quarries) shall exercise no supervision or control over second party or any of his employees or the manner or means by which the mining work is carried on and is interested only in the products of said quarries delivered to him on the ground aforesaid."

"The party of the second part is hereby granted the right to possession of a designated pit or pits within the said mines and quarries for the purpose of mining the same; provided, however, the party of the first part shall have the right to enter upon said claim or claims or any designated pit or pits therein at any time to inspect the work being done or make such tests as he may desire, and to haul and transport the mined rock.

"This contract shall commence as of the date first above mentioned and shall expire by mutual agreement or by operation of law, or may be terminated by either party upon giving the other party one (1) day's notice of his election to terminate the same. * * *"

Findings of fact were made by the Industrial Commission at the time of the hearing before that body. We quote the following from said findings:

"2. That active supervision of said work is in charge of Floyd Page, under the title of Manager of Field Office. That said Floyd Page has final jurisdiction, and power, to pass upon the size, shape, color, thickness and quality of rock offered for shipment; that he operates a tractor and bulldozer to strip the over-burden from the rock; that he supervises the truck drivers in the loading and transportation of the stone or rock.

"3. That three or more truck drivers are employed by him as Manager, who places the rock upon the trucks and operate the trucks between the quarry and the place

of delivery thereof. That these truck drivers sometimes are given helpers who are likewise under the supervision of Floyd Page; that said truck drivers, in the absence of Floyd Page, pass upon the quality of the rock and they refuse to load it if, in their opinion it does not measure up to marketable specifications."

"5. The marketable quality of the rock is governed by its size, shape, colors and thickness. The employer has sole jurisdiction to determine the grading and classification of the rock, and whether the rock quarried is marketable; and its determination is final.

"6. The men engaged in quarrying the rock under contract, assist one another in loading the rock on the trucks."

"8. The contract does not require the men engaged in quarrying to work any specified number of hours per day, week or month. None of the persons employed as quarrymen are licensed contractors within the provisions of Article 8, Ch. 67, ACA., 1939."

Then followed a conclusion of law that the relation of employer and employee existed between the parties.

We find in reading the testimony in the case that the findings above quoted are borne out by the testimony of various witnesses.

The testimony also discloses that blasting of the flagstone or other rock is discouraged by the quarry company because it has a tendency to decrease the quality of the rock below acceptable standards. For this reason they have refused to accept some stone that was blasted instead of being taken out by tools. The testimony also discloses that the power to pass upon the quality of the stone was in Floyd Page who managed the field office at Ashfork, Arizona. However, he stated that the drivers took it upon themselves to refuse stone that they knew he would not accept. The testimony further discloses that these quarrymen, under the contract above referred to, understood that they had no protection under the Workmen's Compensation Law of our State. Code 1939, § 56-901 et seq. Neither did said persons have the right to social security benefits.

It is fitting at this time to note that the contract under which this work of quarrying rocks is being carried on does not provide for the loading of the flagstone or rocks upon the trucks. However, it seems to be an added requirement not expressed in writing. Actually the quarrymen help one another, on an exchange work basis, in performing this part of their work.

Section 56-928, A.C.A.1939, as amended by Chapter 33, Laws of 1945, in reference to a rule to determine the status of a person employed, says:

"(b) When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such con-

tractors and the persons employed by him, and his sub-contractor, and persons employed by the sub-contractor, are within the meaning of this section, employees of the original employer.

"(c) A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job, or piece of work, and subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section."

Appellee in presenting his case reminds us not to overlook the issue which is: "Were the quarrymen employees or were they independent contractors?" and quotes from Crabe v. Industrial Commission, 38 Ariz. 322, 299 P. 1031, 1033, which gives the test of whether or not a person is an independent contractor by the following question: "If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof?"

The record is replete with testimony by persons employed, to the effect that no control or supervision was exercised over them by the appellee; that no hours of work, no days of work and no fixed quota of output were required of the men. An instance in the testimony shows that one of the men doing quarry work under the contract went to Prescott and remained for some time to have dental work done, and he did not report when he left nor when he returned.

Appellee asserts that he "is concerned only with the rock produced, not with the manner, method, means, nor the time involved in its production."

Further light supporting the theory of the appellee is that the quarryman furnishes his own tools and equipment; that he may employ others to do the work for him or with him; that the quarryman, alone, can hire and discharge any workers he might employ; that he is responsible for the payment of wages of those whom he employs; that he is responsible for workmen's compensation insurance for his workers; that the appellee has no right to supervise nor control the work.

Appellee quotes as follows from 27 Am. Jur., Independent Contractors, Sec. 21, p. 501, which has to do with the right of the independent contractor to terminate the employment at any time:

" * * * But this doctrine is apparently not reconcilable with the language used in the majority of cases, and it is obviously inconsistent with cases where persons employed are held to be independent contractors although their employment is terminable at any time. * * *"

"The relation between the parties is, however, to be determined from all the surrounding indicia of control, and the sole circumstance that the employer has re-

served the right to terminate the work and discharge the contractor does not necessarily make the contractor a mere servant."

An important case in our state and one quoted by appellee is the Southwest Lumber Mills v. Industrial Commission, 60 Ariz. 199, 134 P.2d 162, 165. This is a case where the lumber company had a permit from the United States Forest Service to cut and remove certain standing timber. The contract was with one Bruce Gibson who agreed to furnish, at his own expense, all labor, tools, machinery, equipment and supplies necessary to do the work and to conform with all of the state laws, rules and regulations and with the forest regulations and to carry all insurance required by law. One Evans, employed by Gibson, the contractor, lost an eye while working. The main question involved was as to whose employee, Evans was at the time of his injury. Appellee refers to the following from said case:

" * * * During the process he was not under the rule or control of the company beyond making the result conform to the company's design. We reiterate what we said in the Grabe case to the effect that we will not tolerate the adoption of any rules by employers to defeat claims of injured employees, but there is nothing in this case to indicate that the company employed Gibson to perform a finished job of reducing the timber to logs and delivering them to the mill pond, all for a specified price, with the purpose or intent of evading liability or defeating the Compensation Law. The statute (section 56-928) recognizes the right to do what was done. It permits an employer to contract with an independent contractor the performance of 'a definite job or price of work' that the employer has agreed to perform, as was done here."

We find no testimony to the effect that any of the persons employed as quarrymen ever employed any other person. The contract provides that:

"Second party further agrees to faithfully comply with all Federal, State and local laws regulations applicable to the operation of said mine, and especially all laws pertaining to employer and employee."

In truth and in fact the contract was overdone. We doubt that it was ever expected that any of these men working would be able to employ others to help them. It is merely a way by which an employer can get work performed and yet not obey the sacred injunctions of our constitution. Article 18, Section 3 of our Constitution provides:

"It shall be unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability or responsibility on account of personal injuries which may be received by such servants or employees while in the

service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees thereof; and any such contract or agreement if made, shall be null and void."

See also: Industrial Commission v. Frohmiller, 60 Ariz. 464, 140 P.2d 219.

It is the right to control rather than the fact that the employer does control that determines the status of the parties, and this right to control is, in turn, tested by those standards applicable to the facts at hand.

We cannot conceive of an independent contractor subject to being summarily, or within a period of twenty-four hours, dismissed without liability as the contract states, and yet not be under the order and control of another party. From Riskin v. Industrial Accident Commission, 23 Cal.2d 248, 144 P.2d 16, 18, we quote:

"* * *. A strong factor tending to show the relationship of an employee is the employer's right to terminate the work at his pleasure. Neither the manner of payment nor the choosing by the employee of his own hours of work is conclusive of the relationship. * * * The right to immediately discharge involves the right of control. * * *"

'This subject is well treated in this Court's case of Maxey v. Johnson, 29 Ariz. 452, 242 P. 866, 868, wherein it is stated:

"* * * there must exist some actual independency on the part of the contractor, and that a mere shadowy or superficial appearance of such is not enough to take from the employer responsibility for labor and services actually rendered for his use and benefit on the claim or pretext of an independent contract."

To a poor man needing work, the power to dismiss immediately is equivalent to the power to control.

Evidently the truckmen must have received from Page, the manager, instructions as to the class of products he would receive, and they had the right to refuse certain stone, as the testimony in the case shows. Also, under the contract itself, unless the proper kind of stone was mined, and mined in a manner suitable to the quarry company, the company could immediately exercise its right of discharge, but yet, to evade the law they stated in their contract that they had no control over the quarrymen.

Here, the right to control the work of the quarrymen is shown not only by the appellee's right to terminate their employment summarily, on twenty-four hours notice, the fact that these men co-operate in loading the stone upon the appellee's trucks and the indirect control of the men's production by quality standards from which there was no appeal, but also from the further indicia that: (a) No action could be maintained by the quarrymen for breach of contract upon discharge. Murray's

Case, 130 Me. 181, 154 A. 352, 75 A.L.R. 720. (b) Neither the written contract nor the facts of the situation under which the quarrymen worked contemplated a definite end for their job and this is ordinarily another of the signposts for determining whether a man is, in reality, an independent contractor. Sec. 56-928; Arizona-Hercules Copper Co. v. Crenshaw, 21 Ariz. 15, 184 P. 996. (c) Neither could these quarrymen be said to be engaged in a skilled occupation or a distinct business in the sense applicable to independent contractors. Re James Murray, supra. (d) Nor is this an occupation ordinarily performed by independent contractors. (e) The men were not paid at the completion of the job (in fact, under the arrangement here the job would continue indefinitely as long as the quarries remained open and the men's work was satisfactory), but were paid bi-monthly for tonnage actually produced by them in that period. Again this suggests that the men were employees not only because the payment was at regular time intervals instead of intervals governed by a job done, but because the time interval selected is the longest that would comply with our statutory requirements for the payment of employees. Sec. 43-1601. (f) Operating a quarry was the regular business of this employer. (g) None of the men in question were licensed as contractors yet if, indeed, they were not employees but instead independent contractors, they would, by the definition set forth in Sec. 67-803 be engaged in the contracting business and required to be licensed by the State. (h) Finally, men are not ordinarily in the position of having to vacate their homes with all the attendant inconveniences of moving their families and possessions when they quit or are discharged from a particular job. Here, however, such was the case as the appellee owned the houses in which the men lived and which had to be vacated immediately upon their leaving this work. This factor multiplied the potency and effect of the appellee's ability to discharge. It cut boldly across all the carefully planned ostensible indications of independency and further insured the actual fact of control.

The employment status of parties is not determined by the appellation which they give it. 40 Am.Jur., p. 157; Romero v. Dalton, 2 Ariz. 210, 11 P. 863; Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958. And the courts do not countenance ingenious contrivances to circumvent or avoid the beneficent provisions of the Workmen's Compensation Law. Sec. 56-977.

Guided by the application of some of the usual tests for determining an independent contractor (Prosser on Torts, 1941, p. 474–5; Restatement of Agency, Chap. 7, Par. 220; Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35; Consolidated Motors v. Ketcham, 49 Ariz. 295, 66 P.2d 246) to the facts in this case, and reviewing the entire record of undis-

puted facts, the only reasonable conclusion is that the so-called "independent contractors" are, in truth, employees of the appellee. The employer was using an escapist device in a cleverly drawn contract in an endeavor to circumvent and avoid the responsibility which the law imposes upon him to provide coverage and protection for his employees.

The judgment of the Superior Court is reversed and the order of the Industrial Commission is sustained.

LA PRADE and UDALL, JJ., concur.