256 P.2d 709

### SERRANO v. INDUSTRIAL COMMISSION et al.

### No. 5746.

Supreme Court of Arizona.

May 11, 1953.

J. Hubert Smith, of Phoenix, for petitioner.

Robert E. Yount, Phoenix (Perry M. Ling, Robert W. Pickrell and Donald J. Morgan, Phoenix, of counsel), for Industrial Commission.

PHELPS, Justice.

Everado Serrano, hereinafter called petitioner, sustained an injury in an automobile accident while enroute from Davis Dam where he was employed by Grafe-Callahan Construction Company, to his home in Kingman. The employer will hereinafter be referred to as respondent, and the Industrial Commission as commission. Petitioner filed his petition with the commission for compensation for the injury sustained which was denied and the case comes to us on certiorari.

The facts are that petitioner had begun work for respondent at Davis Dam at 12:30 a. m. on May 23, 1952, the morning of the injury on what is known as the "graveyard shift" and was off duty at 8:00 a. m. He went directly to the office of the company in Bullhead City to sign certain papers required by the company. Immediately thereafter petitioner and Richard Nardina and L. D. Lynch left for Kingman where petitioner resided, and when they had reached a point a little over half way to Kingman petitioner who was driving his father's truck, "dozed off" and the truck went off the road turning over, fatally injuring Nardina and so injuring and mangling petitioner's arm that it had to be later amputated.

Petitioner was employed as a common laborer and received $1.77 per hour for seven hours' work. He was allowed, in addition thereto, pay for one hour in the nature of a bonus as an incentive to work the so-called "graveyard shift". He was also paid an additional "amount each day equal to one hour's pay for travel and subsistence expense."

Sometime between October, 1951, when respondent began its cleanup work at the Dam and December of that year the Building and Common Laborers' Union at Las Vegas, Nevada, Local 872 representing other unions involved including Local 383 of Kingman, Arizona, (whose business agent had placed petitioner on the job with respondent), made demand upon respondent for travel pay. Another contractor had complied with a similar demand made by the Teamsters & Laborers Union but respondent refused to comply with the demand made upon it on the alleged ground that it would be illegal because it had not been approved by the Construction Industry Stabilization Commission at Washington. The respondent, however, refused to join with the union in a petition to the Stabilization Commission for its approval. Thereupon the Las Vegas Union called a strike in December, 1951. Thereafter as a result of the called strike, respondent joined in a petition with the union to the Stabilization Commission for its approval of travel pay for all employees. The Stabilization Commission, on April 4, 1952, granted the approval in the following language, insofar as is pertinent to this case:

"On the basis of the facts submitted, the Construction Industry Stabilization Commission has voted to authorize establishment of the following practice, only on the type of construction specified and for the job classifications and project shown below:

"Project:

"Davis Dam Area—work on Nevada and Arizona sides of Colorado River Project; Completion of Davis Dam Spillway Stilling Basin as per contract awarded by United States Department of Interior, Bureau of Reclamation.

"Heavy construction.

"To pay to each employee, *as an allowance for travel and subsistence expense, and in lieu of any other provision for travel or subsistence, an amount equal to one hour's pay at such employees' straight time rate for each day worked by such employee,* such payment to be effective from the start of the project work and to continue for the duration of project work. Such allowance is to be paid to teamsters and laborers and any other crafts employed on the project for which a payment in like or greater amount has not been heretofore established pursuant to Section 4(3) of Construction Industry Stablization Commission Regulation 1. (Emphasis supplied.)

"The decision may be made retroactive to October 31, 1951."

Gordon L. Wallace, the business agent for Local 383 at Kingman, testified that he had worked at the Dam off and on since 1947. He further testified that according to union rules, any job over 25 miles from the hall from which the men are hired

entitles them to common carrier pay to the job; if over 50 miles they are entitled to a half day's pay and common carrier pay, and if over 150 miles from the job they are entitled to a full day's pay plus common carrier pay. This union rule, he said, is the basis for charging travel pay where the men have to travel 32 to 35 miles a day so that they would, by that means, overcome their expenses for travel. He said, "The job was not set up with a housing, board or lodging or anything like that. That was one of our main reasons for getting the travel time."

The record does not contain the petition to the Construction Industry Stabilization Commission but this statement of the witness Wallace was not denied and we must assume that it is true.

The petitioner contends that the commission erred in finding that the injury did not arise out of and in the course of petitioner's employment and in denying him benefits for the reason that neither the finding of fact nor the award are supported by the evidence or the law.

Specifically the question presented is: Was the petitioner injured by accident arising out of and in the course of his employment? If so, the finding and award of the commission must be set aside. Otherwise it should be upheld.

It is the general rule that injuries sustained by an employee in going to and returning from work are not compensable.

Strauss v. Industrial Commission, 73 Ariz. 285, 240 P.2d 550; Voehl v. Indemnity Insurance Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245; Kobe v. Industrial Accident Commission, 35 Cal.2d 33, 215 P.2d 736, 737. But there is a well-established exception to that rule.

In Kobe v. Industrial Accident Commission, supra, the court said:

"* * * However, the employer may agree, either expressly or impliedly, that the relationship shall continue during the period of 'going and coming,' in which case the employee is entitled to the protection of the act during that period. Such an agreement may be inferred from the fact that the employer furnishes transportation to and from work as an incident of the employment. (Citing cases.) It seems equally clear that such an agreement may also be inferred from the fact that the employer compensates the employee for the time consumed in traveling to and from work."

See also Larson's "The Law of Workmen's Compensation," Vol. 1, p. 227, § 16.20, title, "Payment for Time of Travel"; and section 16.30, p. 229 under title, "Payment for Expense of Travel," and cases cited thereunder on page 230 et seq. See also "Annotations on Travel Pay in Going to and from Work," 87 A.L.R. 250, et seq.

In Swanson v. Latham & Crane, 92 Conn. 87, 101 A. 492, it was held that where an

employer agreed with his employees to pay a stated amount in addition to the regular wages as transportation charges and an injury occurred while the employee was riding with one whom the contractor had arranged to carry the employee, the court held that the work began when the employee reached the place where the work was actually being performed, but that the employment began when he boarded the automobile and continued during the trip and during the work and on the return trip. In the case of Cary v. State Industrial Commission, 147 Okl. 162, 296 P. 385, wherein an employee together with others was paid so much a foot to run a string of casings in an oil well plus an additional charge for transportation to and from work that where such employee was injured the compensation fund was liable therefor. These decisions are based upon the proposition that the employment relationship existed during the employee's travel to and from work and during the period that the work was actually being done.

We said in McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 226 P.2d 147, that in order for a workman to be entitled to an award for compensation under the Workmen's Compensation Act the injuries must result from an accident arising both out of and in the course of his employment. We also said in that case that an injury or accident occurs in the course of his employment if the employee is injured while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time. The words "in the course of" refer to the time, place and circumstances under which it occurred. And the words "arising out of" were held to mean that the cause producing the accident must flow from a source within the employment. The source must have its situs in some risk inherent in the employment or incidental to the discharge of the duties thereof. See Goodyear Aircraft Corporation v. Gilbert, 65 Ariz. 379, 181 P.2d 624.

There having been no housing, board or lodging accommodations provided for employees at or near the Dam where the work was being done it was necessary that these employees reside where such accommodations could be obtained. Kingman was the closest point to the job where such accommodations were available. As stated by the witness Wallace that was the primary reason for allowing the travel pay. Therefore in order for petitioner to perform his work on the job he had to travel to and from Kingman which was certainly incidental to the work done on the job. His travel between Kingham and the Dam did not only fall within the category of what he may reasonably do but it was as much a part of his employment as the actual work on the job. It was within the time, the place and the circumstances of his employment, and the cause producing the accident had its source within the em-

ployment and in a risk inherent therein, to wit, the hazard of traveling to and from his job to the only available living accommodations.

It will be observed that the order of the Construction Industry Stabilization Commission did not fix one hour as a definite limit of time to go to and from work so that the injury must have occurred within any nine-hour period. What the board actually did was to fix an amount of travel pay "equal to one hour's pay" at such employee's straight time rate for each day worked by such employee. That amount was as much a part of his daily wage as the $1.77 he received per hour while actually working on the job.

We therefore hold that the employment of petitioner began when he left Kingman, continued during the trip to the Dam, during the work on the job and during the trip from the Dam back to Kingman. This being true, it follows that the injury to petitioner resulted from an accident arising both out of and in the course of his employment. There is no conflict in the evidence and the finding and award of the commission is not supported by the evidence and is contrary thereto.

The award of the commission is set aside.

STANFORD, C. J., and LA PRADE and UDALL, JJ., concur.