284 P.2d 459

**EBASCO SERVICES, Incorporated, Petitioner,**

v.

**Mayme Z. BAJBEK, widow of, and Theresa Bajbek, child of Joseph Bajbek, deceased, and the Industrial Commission of Arizona, Respondents.**

No. 6001.

Supreme Court of Arizona.

May 31, 1955.

Rehearing Denied June 21, 1955.

John E. Madden, Phoenix, for petitioner.

Odin B. Dodd, Tucson, for respondents Mayme Z. Bajbek and Theresa Bajbek.

Donald J. Morgan, Phoenix, for respondent The Industrial Commission of Arizona, John R. Franks, Robert K. Park, Phoenix, and John F. Mills, Prescott, of counsel.

PHELPS, Justice.

This case comes to us by certiorari to set aside an award of the Industrial Commission in favor of respondents, Mayme and Theresa Bajbek, wife and daughter respectively of decedent Joseph Bajbek. Ebasco Services, Incorporated, will hereinafter be referred to as the petitioner; The Industrial Commission as commission, and Mayme and Theresa Bajbek as respondents.

Deceased Bajbek was killed January 4, 1954, at about 8:05 a. m. in a one-car auto accident, while en route from his home in Tucson to a regular shift at employer's jobsite at the Red Rock steam plant about 32 miles from Tucson. Bajbek was paid the sum of $4.00 per day for travel expense.

The sole question presented is whether the commission erred in its findings that

death occurred by an accident arising out of and in the course of decedent's employment. In awarding respondents death benefits the commission found that the case came within the exception to the general rule of "going and coming to work" which will be set out hereafter.

The pertinent facts are these: Petitioner was constructing a new electric steam plant in Red Rock. Like the vast majority of employees at the petitioner's plant, deceased lived in Tucson. There were no housing facilities at the plantsite, and the employees could live wherever they desired. At the time the accident occurred the petitioner provided no transportation facilities for its employees, therefore, each had to provide his own means of transportation from home to jobsite and from jobsite to home. There were six different trades working at petitioner's plant. Of the six trades involved only two, namely the boilermakers and electricians, had a clause in their union contract to receive travel expense to and from work. The decedent was a member of the electrical union.

The terms of decedent's employment were governed by the provisions of the collective bargaining agreement as amended between Local 570 of the IBEW (International Brotherhood of Electrical Workers) and the Arizona Chapter of the NECA (National Electrical Contractors Association).

The agreement, prior to amendments effective September 20, 1953, provided in part:

"Article III
"Hours—Wage Payment
"Working Conditions

\* \* \*

"13.

\* \* \*

"A free zone shall be created in Tucson with the following boundaries: \* \* \*."

The agreement after making provisions for jobs within the free zone, then made the following provisions for jobs outside the free zone:

"On jobs outside the free zone employees shall report at the shop or a designated location enroute to job in sufficient time to be transported to job by the regular starting time and shall remain on the job until the regular quitting time. Employees shall receive as travel expenses a sum equal to straight time at employees' regular rate to and from the job from the free zone."

At the outset of the negotiations in March, 1953, pursuant to the reopening clause in the agreement the NECA advised the IBEW of its desire to have the above language deleted in its entirety from the agreement and provide that "the Union will be expected to furnish men free of travel time and subsistence in the jurisdiction of the Union."

During the 1953 negotiations the parties to this agreement discussed the effect of the language above quoted with respect to the possible liability thereunder of employers under the Workmen's Compensation Act, A.C.A.1939, § 56–901 et seq., and to third persons for tort liability by virtue of an employee's negligence while travelling from jobsite to home or from home to jobsite. Both parties, by and through their authorized bargaining representatives entered into the amended agreement later interpreted through proper channels to eliminate any possible liability under the Workmen's Compensation Act, of employers by virtue of said language, and to third persons by virtue of an employee's negligence while travelling from jobsite to home or from home to jobsite.

At the close of negotiations these parties, on August 5, 1953, signed the agreement to amend the above quoted provision, said amendment taking effect on September 20, 1953. The amendment provided for a series of circular zones of ten miles radius each. A free zone was created with Tucson's city hall as the center, including the area within a circle of ten miles' radius. Additional zones outside this free zone were created by using the same center and drawing circles, each one being larger than the preceding one by ten miles.

Under the provisions of the amended agreement, on jobs outside the free zone, employees are paid travel expense with a differential scale for each zone; the farther away the zone the larger the travel expense allowed. Employees in zone 3, the one here involved, received $4.00 per work day.

The travel expense was granted in order to compensate the employees covered thereby for their out-of-pocket expenses in travelling from home to jobsite and from jobsite to home. The decedent being one of the employees covered by the above amendment, received travel expense amounting to $4.00 in addition to his regular daily wages. No deductions of any kind were withheld from this amount. The travel expense was paid by a voucher, separate from the weekly wage check.

A few months after the amendment went into effect it was submitted to the Tucson Joint Conference Committee for an interpretation of the travel expense clause. The contract between the parties created the committee and provided that it shall consist of three members representing the Union and three members representing the employers and that all questions coming before it shall be decided by a majority vote. The committee made the following report on the question presented:

"* * * The negotiating committee intended that the present travel expense clause was out-of-pocket expense to the employee and we intended to get entirely away from the idea of travel time. * * *."

The fact of the fatal accident is not disputed nor is there any dispute that it occurred while decedent was on his way from home to the jobsite. The question is whether, under the terms of the contract above mentioned, petitioners are entitled to benefits under the Workmen's Compensation Act.

■ All parties interested in this appeal are in agreement to the effect that the general "going and coming" rule is still the law in Arizona. This rule was set out by Justice Lockwood in the case of Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703, 705, as follows:

"It is of course the general rule in compensation cases, subject to a few exceptions, that a man does not enter an employment until he reaches the place where the work of his employer is to be carried on, and similarly, when he has finished all the work required by his duties and leaves the place of business of his employer to go to his own home, he has left the employment, and that an accident which may occur to him on his way to or from his work is not in the due course of his employment. * * *."

But the parties are in disagreement as to the exceptions to the general rule and as to what law the commission should apply. The commission contends that after Serrano v. Industrial Commission, 75 Ariz. 326, 256 P.2d 709, the court expressly excluded the idea of "time" as being the test, but that the test was whether he was being compensated for travel, and whether the accident occurred as a risk incidental to the travel, while petitioner contends that the Serrano case, supra, does not apply to these facts because after the Serrano decision was handed down the parties foresaw the possibility of liability under their then existing contract so they amended the agreement whereby the possibility of liability was eliminated in the manner as stated above.

We are in accord with the views of the petitioner that this case is controlled exclusively by the terms of the amended agreement bearing date August 5, 1953, between the NECA and Local 570 of the IBEW. The amended agreement as it related to the general "going and coming" rule was interpreted by the Tucson Joint Conference Committee as above set forth.

■ The IBEW and the NECA here had the right to amend their contract and expressly agree either that the Workmen's Compensation Act covered the employees while travelling to and from their work, or that it would not cover them. We have consistently held that in the absence of a contract either express or implied providing for compensation while "going and coming" to and from work the Workmen's Compensation Act does not cover them. They apparently attempted to provide by the amended agreement that such employees would not be covered thereby, evidently to avoid any claim of an implied

agreement for coverage. The language used in the amended agreement is not too clear, and the parties to the contract through their representatives having been expressly given the right to amend such agreement certainly had the lawful right to agree to an interpretation of the language used in the amended agreement as such contract related to the liability of the employer under the Workmen's Compensation Act while the employee was going to and from work, and we are bound by the intent of the parties to the contract as interpreted by them. Neither the Serrano case, supra, nor any other decision of this court throws any light upon this case. This decision must rest squarely upon the contract.

For the above reasons the award is set aside.

UDALL and WINDES, JJ., concur.

LA PRADE, Chief Justice (dissenting).

I cannot bring myself to agree with the conclusion that this case is not compensable. It seems to me that its basic facts are on all fours with the facts in Serrano v. Industrial Commission, 1953, 75 Ariz. 326, 256 P.2d 709, 710. In both cases the terms of the employment contract had been agreed to by the union and the employer. In the Serrano case the contract provided for a specified hourly wage and " 'an allowance for *travel* and subsistence *expense* * * *.' " In the instant case the amended contract provided.: "On jobs outside the free zone employees will receive as *travel expense* the sum of * * * $4.00 per work day for any job in Zone 3." (Emphasis supplied.)

This amended contract had three chronological phases.

1. It provided originally that for jobs outside the free zone "employees shall receive as travel expenses a sum equal to straight time at employees' regular rate to and from the job from the free zone".

2. It was then amended to read "On jobs outside the free zone employees will receive as travel expense the sum of * * $4.00 per work day for any job in zone 3 * * *."

3. Then with reference to this amended provision the contracting parties concluded that this last provision as amended should be by them interpreted. A joint negotiating committee with reference thereto provided their interpretation as follows: "The negotiating committee intended that the present travel expense clause was out-of-pocket expense to the employee and we intend to get entirely away from the idea of travel time."

It was made to appear by evidence before the Commission that at the time this amended contract was adopted the parties had discussed possible liability under the original contract of employment under the Workmen's Compensation Act, and to third persons by virtue of an employee's acci-

dent or negligence while travelling from jobsite to home or from home to jobsite. Under this amended contract each employee would receive approximately $100 per month which was free from withholding tax. Likewise under the contract the employer freed himself of the obligation to pay the workmen's compensation premiums which was no small item when there were approximately fifty electricians who would receive this extra compensation of $100 per month. Likewise the employer would escape paying social security tax thereon. The temporary advantage to the employee was that he would receive the $100 per month free of the withholding tax but the disadvantage was that he left himself and dependents "high and dry" if he was injured or killed. The state's interest in the employment status is that dependents shall not become a public charge.

In the Serrano case it was determined that the effect of the employer allowing travel expense brought the employee within an exception to the "going and coming rule", and extended to the employee the benefits of the Act.

In each of the contracts the subject of transportation is singled out because the travel involved a considerable distance, 32–35 miles in each case, there being no living accommodations at the jobsite. In the Serrano case the employee was allowed a flat $1.77 for the trip which amount was equal to one hour's pay, but could not be considered as an allowance for *time,* for the reason that the roundtrip could not have been covered in one hour. Many cases demonstrate that when the distance element is involved and expense payments are made to recompense the employee that the employment field is enlarged to encompass the travel. Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Dooley v. Smith's Transfer Co., 1948, 57 A.2d 554, 26 N.J. Misc. 129, a commuting trip from Nantucket, N. J. to Newark, N. J. in the employee's car with expenses paid by employer; Williams v. Traveler's Ins. Co. of Hartford, Conn., La.App.1944, 19 So.2d 586, an expense paid journey of 30 miles; Puett v. Bahnson Co., 1950, 231 N.C. 711, 58 S.E.2d 633; Maryland Casualty Co. v. Mason, 5 Cir., 1946, 158 F.2d 244; see I Larson's Workmen's Compensation Law, Section 16.30.

The inherent demands of this employer's business required something more than is given by the employee who is subject to the going and coming rule. The time and money expended by petitioner's decedent was substantial for which he was compensated in a sum in excess of $100 per month. I can't see that it makes any difference whether such a payment is labeled as a payment for time or a payment for expense; the employee furnishes both.

From the evidence it appeared that the employees, including the decedent, ordinarily travelled in car pools and $1.00 per

day per man defrayed this expense. Decedent's rate of pay was $2.90 per hour. The roundtrip consumed approximately two hours. If the field of employment was expanded to include this conglomerate of time and expense, then the *status* of employment existed at the time of the accident. If the status of employer and employee existed and the injuries arose out of and in the scope of the employment, as the Serrano holding would indicate, the case was then compensable.

The parties were wholly without authority to contract in advance or after an accident to the effect, that regardless of the fact of employment and injury arising out of and in the course of the employment, the provisions of the Act would be considered waived or not applicable. The Workmen's Compensation Act is mandatory on both employer and employee and may not be waived or contracted away. This court, in Ocean Accident & Guarantee Corporation v. Industrial Commission of Arizona, 1927, 32 Ariz. 275, 257 P. 644, said, at page 646:

" * * * This act, so far at least as the employer is concerned, is compulsory in its nature; he has no option as to whether he shall accept or reject it, and the whole language both of the constitutional amendment authorizing it and of the act itself shows clearly that they were based, not on the old theory of contract between the parties, but upon the inherent right of the state, recognized by the Supreme Court of the United States in the cases above cited, by virtue of its police power to establish certain rules regulating the status of employer and employee. We therefore hold that the present Arizona Workmen's Compensation Act is neither elective nor contractual in its nature, but, on the contrary, that it rests upon the police power *to regulate the status of employer and employee* within the state of Arizona, and that no contract, express or implied, made within or without the state of Arizona, unless expressly so authorized by our law, can of itself affect the rights and duties of such status. It is governed, so far as this subject is concerned, solely by the provisions of the Arizona statutes, and nothing else. * * *"

For other cases in which the existence of a contract was not allowed to avoid the application of workmen's compensation laws see: Industrial Commission v. Meddock, 1947, 65 Ariz. 324, 180 P.2d 580; Industrial Commission of Arizona v. J. & J. Const. Co., 1951, 72 Ariz. 139, 231 P.2d 762.

The award should be affirmed.

STRUCKMEYER, J., concurs in this dissent.