486 P.2d 802

Catherine BASINGER, Widow et al., Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Wayne E. Adams and Robert J. Adams, d/b/a Adams Contracting and Adams Insulation, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 459.

Court of Appeals of Arizona, Division 1.
Department B.
July 19, 1971.

Rehearing Denied Sept. 30, 1971.

Review Denied Oct. 27, 1971.

Eugene J. Lane, Tucson, for petitioners.

Richmond, Ajamie, Fay & Warner, by Jack C. Warner, Phoenix, for respondent Employer.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund, Phoenix, for respondent Carrier.

JACOBSON, Presiding Judge.

On this appeal by certiorari from an award of The Industrial Commission, the widow and six minor children of William R. Basinger seek death benefits, alleging Mr. Basinger's death arose out of and in the course of his employment. The Commission, after three hearings, entered its award finding that Mr. Basinger's death did not arise out of the course of his employment and therefore was noncompensable.

Initially, there appears to be some confusion in the Commission file as to the name of the true employer in this case. This matter had been carried in the Commission file as Basinger v. Adams Insulation, *Inc.* and State Compensation Fund, No. BE 57392. The evidence presented at all the hearings clearly established that Mr. Basinger was in fact employed by a partnership consisting of Wayne E. Adams and Robert J. Adams, doing business as "Adams Contracting". This partnership was sometimes known as "Adams Insulation".

The employer's counsel brought this to the attention of the Commission and in an apparent attempt to correct the employer designation, the Commission issued a *nunc pro tunc* order as to the name of the employer. Unfortunately, the *nunc pro tunc* order perpetuated the designation of the employer as a corporation. In view of the undisputed testimony that Mr. Basinger was employed by the partnership and not the corporation, this opinion shall have reference to the employer as a partnership doing business as "Adams Contracting" sometimes known as "Adams Insulation".

The deceased, William R. Basinger, had been employed by Adams Contracting as a boiler insulator for approximately ten months prior to his death. During the period of time immediately preceding Mr. Basinger's death, his employer had several jobs going: one in Morenci, Arizona, one at the Junior College in Cochise County near Douglas, and a third at the University of Arizona in Tucson, known as the Basic Science job. The deceased resided in Tombstone, Arizona.

For some time prior to his death, Mr. Basinger had been working at the Morenci job as a foreman and during the week was living in Clifton, Arizona, an adjoining community. He normally returned to his home in Tombstone on weekends. The deceased had also made arrangements with his employer, apparently on a private basis, that he would perform work on other jobs of his employer during the weekends on a straight time wage basis, as opposed to

double time wages called for by the union contract. Pursuant to this weekend employment arrangement, the deceased had on several occasions performed work both at the Douglas job and the Tucson job, his usual practice being to drive from Morenci to his home in Tombstone on Friday night, spend the night at home, and then go to the jobsite the following Saturday morning.

Several days prior to August 25, 1967, the deceased was contacted by his employer and requested to report to the Basic Science job in Tucson on Saturday morning, August 26, 1967. The Basic Science job apparently was completed; however several minor defects in the job which showed up on a "punch list" needed correction. The deceased's brother, who was also employed by Adams Contracting and who also lives in Tombstone, testified that Mr. Basinger telephoned him advising him to get all the tools together and be ready to leave Tombstone on Friday night, August 25, to go to Tucson to do the job required on Saturday morning. This procedure would be contrary to the deceased's normal practice.

The evidence disclosed that Friday evening, August 25, 1967, after the work day had ended, the deceased went to the Coronado Inn in Clifton, Arizona, and had two beers with one of his men. He informed the bartender that he "was going home" and that he was "in a hurry to get home before his wife put the children to bed." He then went across the street and purchased a six-pack of beer, got in his pickup and drove five or six miles down the highway to the "Three-Way" tavern and had another beer. After leaving the "Three-Way" tavern, he proceeded down the road for two or three miles where he was involved in a one-car accident which resulted in his death. The highway on which the accident occurred was the shortest direct route to both Tucson and Tombstone, his home.

The union agreement in existence at the time of the deceased's death between the

**124**

Arizona Chapter of Association Insulation Contractors and the International Association of Heat and Frost Insulators and Asbestos Workers, Local No. 73, and which governed travel situations at the time of the deceased's death provided:

"When work is performed in the subsistence Zone 4 and 5 [Morenci is in Zone 5], all employees shall be paid an allowance for travel expense of Twelve Cents ($.12) per road mile to the job site from the City Hall of Phoenix or City Hall of Tucson *at the beginning* and *the end of the job* when travel is actually performed.

"If an employee is sent from one job to another in Zone 4 or 5 [Tucson is in Zone 1], he shall be paid travel expense of Twelve Cents ($.12) per mile from the first job site to the new job site * * * Mileage back to Phoenix or Tucson will be paid from the new job site *at the completion of the job.*"

This language is to be compared with the union agreement in effect for the period 1961–1963 which provided:

"Workmen shall receive in addition to the above and foregoing subsistence, bus fare and travel *time at contract rates* to and from jobs in Zones IV and V." (Emphasis added.)

The petitioners agree that generally the workmen's compensation laws of Arizona do not apply and workmen are not to be compensated for injuries occurring during the journey to or from their place of employment. Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485 (1968); Ebasco Services v. Bajbek, 79 Ariz. 89, 284 P.2d 459 (1955); Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703 (1937).

Petitioners do contend, however, that Mr. Basinger's death occurred under circumstances which would place him within either of two exceptions to this general "coming and going" rule, that is, (1) that his employment was such that the job required travel for his employer or (2), he was being compensated by his employer for travel and therefore was under the protec-

tion of the Workmen's Compensation Act. *See,* Serrano v. Industrial Commission, 75 Ariz. 326, 256 P.2d 709 (1953); Harris v. Industrial Commission, 72 Ariz. 197, 232 P.2d 846 (1951); Butler v. Industrial Commission, *supra.*

Petitioners' first contention is, of necessity, basically dependent upon the facts underlying Mr. Basinger's employment and his arrangement with his employer requiring his presence in Tucson on August 26, 1967. In such a case, if the Commission's decision is supportable by reasonable evidence we are not at liberty to substitute our findings for those of the Commission. Graver Tank & Mfg. Co. v. Industrial Commission, 96 Ariz. 34, 391 P.2d 589 (1964). Moreover, it is within the province of the Commission to judge the credibility of witnesses, not this Court. Sanchez v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579 (1964). With these limitations in mind we are of the opinion that the referee's conclusion that Mr. Basinger was not ordered to the Tucson Basic Science job by his employer, but that such work was casual weekend employment, separate and apart from the deceased's regular work in Morenci, is supported by the evidence.

There was evidence that Mr. Basinger was employed as a general foreman on the job in Morenci while the duties required by the Tucson job were correcting deficiencies disclosed by a "punch list" and were not in the foreman category. It further appears that Mr. Basinger's weekend employment was by a private arrangement with his employer whereby he was paid on a straight time basis rather than at double time. This took the subterfuge of Mr. Basinger working eight hours, while his payroll sheet was kept so as to indicate he worked four hours to avoid problems with the Union. This was as a result of the deceased's insistence that he be given extra work but his employer's reluctance to pay double time for this work.

While the deceased's brother's testimony would indicate the necessity of going di-

rectly from Morenci to Tucson on the night of his death at the insistence of his employer, the deceased's statements to the bartender that he was going home, his drinking and his prior habits of staying home in Tombstone on Friday nights are evidence that in fact Mr. Basinger was merely returning home as was his normal procedure. From this evidence the Commission could and did conclude that the accident which took Mr. Basinger's life occurred on a weekend after he had concluded his work for the week and while returning to his home and not while he was on a special mission for his employer or while his work actually necessitated such a journey.

Petitioners next contend that under the union agreement in existence at the time of the deceased's death he was entitled to travel expenses for his trip from Morenci to Tucson and therefore he was being "compensated" by his employer for the journey which took his life and he fell within the exception to the "coming and going" rule enunciated in Serrano v. Industrial Commission, *supra.* While there are serious questions as to whether the payment of travel expenses qualifies as "compensation" so as to place the employee within the provisions of workmen's compensation laws (*see,* Ebasco Services v. Bajbek, *supra,* and dissent therein), it appears from the agreement itself that such travel expenses were not available to the deceased on the occasion which gave rise to his death.

The union agreement specifically provided that travel expenses were to be paid employees on three occasions: (1) at the beginning of their travels from either Tucson or Phoenix to the jobsite, (2) at the completion of the job when the employee returned to Phoenix or Tucson, and (3) for travel incurred when employees were transferred from one jobsite in Zones 4 or 5 to another jobsite in Zones 4 and 5. The deceased at the time of his death fell into none of these categories. The deceased had started on the job in Morenci some time prior to his death and at the time of his death the job in Morenci had not been completed. Moreover, even if the petitioners' contention that the deceased was on a special mission for his employer in going to Tucson is correct, the union agreement provides for travel expenses only between jobsites in Zones 4 and 5. Tucson being in Zone 1, the agreement would not provide for travel expenses.

In our opinion the union agreement of 1966–1968 under which the deceased was employed at the time of his death, was drawn specifically to avoid both the effect of Serrano v. Industrial Commission, *supra,* and the ambiguities contained in the 1961–1963 agreement. This latter agreement provided " * * * travel time at contract rates to and from jobs in Zones IV and V." It could be argued that any trip taken by an employee under this agreement which took him from the jobsite in Zones 4 and 5 to anywhere else in the state, including trips home on weekends, would entitle him to travel pay.

The agreement in existence at the time of the deceased's death avoided this ambiguity by making the employer liable for travel only on the three specific occasions previously noted, none of which were present at the time of the accident.

We therefore hold that the employer was not liable to the deceased for travel expenses for the trip which resulted in his death under the terms of the union agreement and we need not decide whether the liability for such travel expenses would place the deceased within the "compensation" exception to the general "coming and going" rule.

The award of the Commission is affirmed.

HAIRE and EUBANK, JJ., concur.