[No. 2994-8-III.   Division Three.   January 3, 1980.]

WESTINGHOUSE ELECTRIC CORPORATION, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, ET AL, *Respondents.*

*Robert V. Holland* and *Bogle & Gates,* for appellant.

*Eugene Arron* and *Walthew, Warner, Keefe, Arron, Costello & Thompson,* for respondents.

MUNSON, J.—Westinghouse Electric Corporation appeals a trial court judgment awarding widow's benefits to Shirley Allyn. The Department of Labor and Industries had denied her claim which the Board of Industrial Insurance Appeals reversed. The board and the trial court found G. Lawrence Allyn within the course of his employment at the time of the injury which resulted in his death. RCW 51.08.013.

The following facts are not in dispute: G. Lawrence Allyn had worked for Westinghouse at Grand Coulee Dam for about 6 months; it was his practice to stay in Coulee City throughout the week and return to his home in Wenatchee only on weekends. Allyn drove his own car to and from his job. In the early afternoon of December 8, 1975, Allyn left his home in Wenatchee to return to his work at Grand Coulee Dam, a trip of approximately 100 miles. He was involved in a car accident while driving to Grand Coulee Dam from his home in Wenatchee, suffering severe injuries from which he died a few months later.

Allyn was a member of Local 497 of the International Brotherhood of Electrical Workers and was employed under the provisions of an agreement between that union and Westinghouse. Under the terms of the agreement, Allyn was entitled to $15 per day travel allowance for travel between his dispatch point, Wenatchee, and his jobsite, Grand Coulee Dam. The applicable provisions of the union contract read in part:

3.14A The employer shall pay for traveling time and furnish transportation from shop to job, job to job, and job to shop except under the following conditions:

. . .

(3) All electrical contractors subject to the Agreement . . . shall compensate workmen the daily travel allowance specified in 3.14B from the nearest temporary headquarters dispatching point to the job. . . .

(4) Workmen employed on jobs of more than thirty (30) man days, located more than seven (7) air miles distance from the City Halls of Wenatchee, . . . shall be paid for the daily travel allowances specified in 3.14B

. . .

3.14B Should the employer request workmen to report directly to a job site in their own transportation and put in full eight (8) hours on the job, workmen shall be compensated the following amounts in addition to their regular wages:

. . .

|  | Per Day Worked 7-1-75 |
| --- | --- |
| . . . |  |
| Jobsites in excess of 50 air miles | 15.00 |

The trial court found, and it is undisputed, that the travel allowance provision in the employment contract was for the benefit of the employer.

█ As a general rule, a worker going to and from an employer's place of business is not in the course of employment. However, a well–established exception to the rule is that a worker is in the course of employment if the employer is required to furnish transportation as an incident to employment either by custom or contract, express or implied. "[I]t is immaterial whether the employer supplies a vehicle of his own or pays for the expense of transportation." *Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 773, 466 P.2d 151 (1970), citing *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 91 L. Ed. 1028, 67 S. Ct. 801 (1947); *Superior Asphalt & Concrete Co. v. Department of Labor & Indus.*, 19 Wn. App. 800, 578 P.2d 59 (1978). In *Venho v. Ostrander Ry. & Timber Co.*, 185 Wash. 138, 140, 52 P.2d 1267 (1936), the court held that "when the vehicle is supplied by the employer for the

mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor." *See Pearson v. Aluminum Co. of America,* 23 Wn.2d 403, 161 P.2d 169 (1945).

Westinghouse asserts that since it did not furnish Allyn's transportation, the exception does not apply. We disagree. Although the employer apparently furnished transportation in *Aloha Lumber Corp. v. Department of Labor & Indus., supra* at 773, the court stated a principle recognized in other jurisdictions and applicable here: "where there is an obligation to furnish transportation, either express or implied, it is immaterial whether the employer supplies a vehicle of his own or pays for the expense of transportation." *See Cardillo v. Liberty Mut. Ins. Co., supra; United States Fid. & Guar. Co. v. Donovan,* 221 F.2d 515 (D.C. Cir. 1954); *Serrano v. Industrial Comm'n,* 75 Ariz. 326, 256 P.2d 709 (1953); *Fisher Contracting Co. v. Industrial Comm'n,* 27 Ariz. App. 397, 555 P.2d 366 (1976); *Zenith Nat'l Ins. Co. v. Workmen's Compensation Appeals Bd.,* 66 Cal. 2d 944, 428 P.2d 606, 59 Cal. Rptr. 622 (1967); *Swanson v. Latham,* 92 Conn. 87, 101 A. 492 (1917); *Fisher v. Otis Elevator Co.,* 28 App. Div. 2d 598, 279 N.Y.S.2d 769 (1967); *aff'd,* 22 N.Y.2d 665, 238 N.E.2d 750, 291 N.Y.S.2d 361 (1968).

In *Cardillo v. Liberty Mut. Ins. Co., supra,* the worker's employer had contracted to furnish transportation to and from work and had paid the expense of transportation in lieu of actually supplying the transportation itself. The worker was injured going home from work. The court held that where the employer is obligated to furnish transportation, it is irrelevant whether the employer supplies its own transportation or reimburses its employees for the use of their own cars. "[W]here the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed." *Cardillo v. Liberty Mut. Ins. Co., supra* at 483. Here, the union contract contains no

express agreement between the employer and the workers exempting an out–of–pocket car expense from the course of the workers' employment. *Cf. N.A. Degerstrom, Inc. v. Department of Labor & Indus.*, 25 Wn. App. 97, 604 P.2d 1337 (1980); *Ebasco Servs., Inc. v. Bajbek,* 79 Ariz. 89, 284 P.2d 459 (1955). By the terms of the contract, Westinghouse agreed to furnish transportation for some of its employees and to compensate electrical workers a daily travel allowance. The contract implies that the $15 daily travel allowance is in lieu of furnishing transportation which Westinghouse had agreed to furnish some of its workers. We find no merit to the employer's assertion that such a travel allowance was not a reimbursement for travel expenses but was "solely additional compensation for the distant job." Nothing in the contract leads to such a conclusion.

The fact that Allyn stayed in Coulee City during the week and drove home only on weekends does not change the nature of the contract nor the fact that the travel was an integral part of his employment. The manner in which the worker chose to spend his per diem travel allowance is of no consequence. There were no restrictions in the contract and he could choose to stay at the jobsite during the week if he wished. *See Fisher Contracting Co. v. Industrial Comm'n, supra; Hubbell v. Motif, Inc.,* 33 App. Div. 2d 854, 305 N.Y.S.2d 845 (1969). The travel allowance was an inducement for the worker to travel to a distant jobsite which was a mutual benefit to both employer and employee, *Zenith Nat'l Ins. Co. v. Workmen's Compensation Appeals Bd., supra.*

We find under the terms of the union contract that the employer had agreed to pay travel costs in lieu of actually furnishing its own transportation. Under these circumstances, Allyn was in the course of his employment at the time of his injury. The workers' compensation act is to be liberally construed and "any doubt as to the meaning of the statute should be resolved in favor of the claimant for

whose benefit the act is passed; . . ." *Gaines v. Department of Labor & Indus.,* 1 Wn. App. 547, 552, 463 P.2d 269 (1969).

The board and the trial court did not err in granting benefits to Shirley Allyn.

Judgment affirmed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied January 31, 1980.

Review granted by Supreme Court April 3, 1980.