[No. 2927–1–III.   Division Three.   January 3, 1980.]

N. A. DEGERSTROM, INC., *Appellant,* v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Appellant,* LILLIAN
M. MONTANEY, *Respondent.*

98

*James A. Fish, Fish, Schultz & Tombari, Slade Gorton,
Attorney General,* and *Thomas R. Chapman, Assistant,* for
appellants.

*Patrick K. Stiley* and *Fredrickson, Maxey & Bell,* for
respondent.

MUNSON, J.—N. A. Degerstrom, Inc., a highway con-
struction company, appeals a judgment awarding widow's
benefits to Lillian Montaney on a workers' compensation
claim. The Department of Labor and Industries had denied
her claim; the Board of Industrial Insurance Appeals, by a
2 to 1 majority, reversed. The board and the trial court
found Kenneth Montaney, who at the time of his death was
traveling from his jobsite, was within the course of his
employment.

Montaney, a skilled grader operator, was killed in a 1-
car, unwitnessed accident, on the evening of October 3, or
the early morning of October 4, 1974. At the time of the
accident, he had been working on road construction near
Pullman. He commuted daily from his temporary residence
to the jobsite, a distance of over 60 miles one way. The
construction company had transferred Montaney to the
Pullman job approximately a week and a half before his
death. Prior to his transfer, he had worked on the new
highway construction, denoted as the Plaza jobsite, near his
temporary residence in Spangle. The trial court found his
employer intended to reassign him to the Plaza jobsite at
some indefinite future time.

On October 3, 1974, Montaney left the Pullman jobsite
about 5 p.m. to return to Spangle. He stopped en route at a

tavern where he had a soft drink and played a game of pool, staying for about one hour. Sometime after 7:30 p.m., he drove onto the barricaded, unfinished highway upon which he had worked until a week and a half before. His car hit a 6–inch layer of freshly laid asphalt, throwing it into a truck parked near the roadbed, causing injuries from which he died.

At the time of his death, Montaney was working under provisions of a union collective bargaining agreement. The applicable provisions, entitled TEMPORARY CONSTRUCTION WORK REIMBURSED AUTO EXPENSE, read in part:

> The parties recognize that it is inconvenient to get to the job location because of varying mileages. The employers are accordingly agreeable to pay *reimbursed auto expense* as an adjustment for out of pocket expense. *It is agreed and understood that while traveling to and from work the employees are not within the course and scope of their employment* and the relationship of employer–employee does not commence until the applicable hourly wage applies.
>
> . . .
>
> Men who work on jobs where they report and where their time starts and stops within a radius of 15 to 30 miles from dispatch points or travel zone centers . . . shall be paid $2.75 per day worked as temporary construction work *reimbursed auto expense.*

(Italics ours.)

Because his dispatch point was Lewiston while working on the Pullman jobsite, Montaney's travel expense reimbursement fell within the 15– to 30–mile zone. Counsel stated at oral argument that while Montaney was working at the Plaza jobsite, Spokane was the dispatch point; it too was within the 15– to 30–mile zone.

The board and the trial court found that the provision for reimbursed auto expense was a negotiated contractual provision intended for the mutual benefit of the employee and the employer. The board and the trial court further concluded that the contract provision which attempted to remove workers from the course of employment for the

purpose of the workers' compensation act was void and of no effect and Montaney was within the course of his employment.

The primary issue is whether the travel expense provision of the contract brought Montaney within the course of his employment. As a general rule, a worker while going to and from work is not within the course of employment. Our workers' compensation act provides coverage only for those injuries to workers "'[a]cting in the course of employment.'" RCW 51.08.013; RCW 51.08.180; *Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 766, 466 P.2d 151 (1970).

However, a judicially created exception provides that a worker is within the course of employment if the employer is obligated, expressly or impliedly, by contract or custom, to furnish transportation as an incident to that employment. *Aloha Lumber Corp. v. Department of Labor & Indus., supra.* The obligation to furnish transportation has been interpreted to include reimbursement for travel expenses in lieu of an employer actually supplying the vehicle. *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 91 L. Ed. 1028, 67 S. Ct. 801 (1947); *Aloha Lumber Corp. v. Department of Labor & Indus., supra.*

The board in its decision concluded that the employer was obligated to provide for Montaney's transportation under the terms of the union agreement. Based on the location of the Pullman project from Lewiston, the worker was reimbursed $2.75 per day or approximately 10 to 15 cents a mile. The board recognized that as a matter of common knowledge highway construction workers must frequently move from one jobsite to another on a temporary basis and that the labor contract was meant to meet the problems of record keeping of travel expenses in a practical way by averaging the reimbursements depending on jobsites from principal dispatch cities. The trial court and the board both conceived this reimbursement as an incident of employment for the mutual benefit of employee and

employer. It has been held that when "the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor." *Venho v. Ostrander Ry. & Timber Co.*, 185 Wash. 138, 140, 52 P.2d 1267 (1936). *See Pearson v. Aluminum Co. of America*, 23 Wn.2d 403, 161 P.2d 169 (1945); *United States Fid. & Guar. Co. v. Donovan*, 221 F.2d 515 (D.C. Cir. 1954); *Serrano v. Industrial Comm'n*, 75 Ariz. 326, 256 P.2d 709 (1953); *Fisher Contracting Co. v. Industrial Comm'n*, 27 Ariz. App. 397, 555 P.2d 366 (1976); *Swanson v. Latham*, 92 Conn. 87, 101 A. 492 (1917); *Frick v. John W. Rouse Constr. Corp.*, 19 App. Div. 2d 685, 240 N.Y.S.2d 1017 (1963).

However, as the court noted in *Cardillo v. Liberty Mut. Ins. Co., supra* at 479, the "statutory phrase 'arising out of and in the course of employment,' . . . is deceptively simple and litigiously prolific." Each employment relationship must be examined to determine whether the employer contracted to furnish transportation to and from work, but "there must be something more than mere payment of transportation costs." *Cardillo v. Liberty Mut. Ins. Co., supra* at 482. The key to compensability under the workers' compensation act for travel is "the underlying contractual commitment to furnish transportation, not the mere reimbursement of transportation expense." *Ryan v. Kasaskeris*, 38 Md. App. 317, 326, 381 A.2d 294, 299 (1977).[1] Thus, we must look to the contract itself to determine whether the employer assumed the obligation to pay the cost of or to furnish transportation.

Here, the contract between Montaney's bargaining representative and the employer expressly provided that the $2.75 per day was a reimbursement only for out-of-pocket car expenses and did not bring the employee within the course of employment while traveling to and from work.

---

[1]Factually, *Ryan* is distinguishable, but the legal principle noted is applicable.

Such a contractual provision does no violence to RCW 51.04.060, which states:

No employer or worker shall exempt himself or herself from the burden or waive the benefits of this title by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void.

The furnishing of transportation to and from work is not a benefit covered by the statute; thus, employers and workers may specifically contract to include or to exclude a "furnishing transportation" provision. A contractual provision excluding transportation is neither a waiver nor an exemption of a benefit under the statute. Here, the parties expressly agreed that the employees were not within the course and scope of employment while traveling to and from work and the reimbursed auto expense was merely an "adjustment for out of pocket expense." We find the reimbursement was merely a fringe benefit which the union bargaining representative made on behalf of union members as indicated by the specific language of the agreement. *Ebasco Servs., Inc. v. Bajbek,* 79 Ariz. 89, 284 P.2d 459 (1955); *cf. Fisher Contracting Co. v. Industrial Comm'n, supra.*

■ The board found that Montaney was "being recompensed for personal auto expense, by reason of an agreement between the employer and the workman's union," and concluded that he "was in the course of his employment . . . at the time he sustained his fatal injury . . ." We agree with the facts, but disagree with the board's legal interpretation of the agreement. Thus, the presumption that the board's findings and decision are prima facie correct does not apply. RCW 51.52.115; *Clausen v. Department of Labor & Indus.,* 15 Wn.2d 62, 129 P.2d 777 (1942).

Because we find that by the terms of the contract, Montaney was not furnished costs of, nor transportation to and from work, we find it unnecessary to reach the issue as to whether Montaney substantially deviated from the course of his employment on the night the accident occurred. The

language of this union contract differs from the union contract found in *Westinghouse Elec. Corp. v. Department of Labor & Indus.*, 25 Wn. App. 103, 604 P.2d 1334 (1980); thus, we reach different conclusions.

Judgment reversed and claim dismissed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied January 31, 1980.

Review granted by Supreme Court April 3, 1980.