555 P.2d 366

**FISHER CONTRACTING COMPANY and Industrial Indemnity Company, Petitioners,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent, Mary H. Mieras, widow, Respondent.**

**No. I CA–IC 1356.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 10, 1976.

Rehearing Denied Sept. 9, 1976.

Petition for Review Denied Oct. 13, 1976.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Lawrence H. Lieberman, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Stevenson, Warden & Smith, by Jerry L. Smith, Flagstaff, for respondent Mieras.

## OPINION

HAIRE, Chief Judge, Division 1.

On this review of the respondent Commission's decision awarding death benefits to the respondent widow, the basic issue is whether the injury resulting in the workman's death occurred in the course of his employment. In order to resolve this issue, we must first examine the facts of this case to determine whether, in general, there is a sufficient showing that the deceased's travel to and from the road construction site where he worked was within the course of his employment. If we find sufficient evidence to support the hearing officer's decision on this initial question, we must then determine whether the evidence supports the hearing officer's finding that, assuming an intervening deviation or abandonment of employment, the deceased workman had resumed his course of employment at the time of the fatal injury.

All of the facts are recited in the hearing officer's meticulous findings. Those findings which we deemed pertinent to our discussion of the first issue presented are as follows:

"A. The deceased was employed as a laborer foreman by the employer on a construction project near Stoneman Park on Arizona Highway I–17. He had previously been employed by this employer on other projects in Arizona and New Mexico. The family of the deceased accompanied him on these assignments.

"B. Up to the time of the deceased's death it was company policy to provide employees with subsistence pay for lodging in lieu of quarters on the job site. The deceased was receiving this subsistence pay prior to and at the time of his death even though he was living in his own home which happened to be near the Stoneman Lake Project. * * *

"C. The deceased was provided with a company truck equipped with a two-way radio. He not only used this truck during working hours but was permitted, and in fact was required, to use the vehicle to transport himself from home to the job and back. He was also given a gasoline credit card to fuel the vehicle at company expense when necessary, al-

though gasoline would normally be available at the job site.

"D. Although not strictly enforced, it was the intent of the employer that the company vehicle be used only on the job and for coming and going between the job site and the employee's residence. The company expected that an employee provided with a company vehicle would use his own personal means of transportation in his own personal business.

"E. Although the company provided transportation for the employee between his residence and the job site it did not pay wages for the time consumed in coming to and going from the job site to home.

"F. The deceased was a non-union, salaried employee of the company. His working hours on the Stoneman Lake project were from 6:00 a.m. to 3:30 p.m. He was not required at any time, prior to his death, to remain overtime or to work on weekends on this project although he was called for overtime work during emergencies on prior projects of the employer.

"G. Although it is alleged that he was on 24 hour call, the evidence to this effect is not persuasive. The deceased had no greater obligation to respond to an after-hours emergency than any other salaried employee, in any other employ, in any other business. The presence of a two-way radio in his truck does not alter this since the use of the radio to call an employee after duty hours is impractical in that the radio is usually turned off when the vehicle is parked at the employee's residence and because of transmission problems in the mountainous area. In any event the deceased had never been called out for overtime work other than by a verbal request of his supervisor on prior projects and never on the Stoneman Lake project."

From these facts the hearing officer concluded that while traveling to and from work the deceased was within the course of his employment.

■ Arizona follows the "going and coming" rule, which in general precludes recovery of benefits for injuries occurring while an employee is going to or coming from his place of work. *Pauley v. Industrial Commission*, 109 Ariz. 298, 508 P. 2d 1160 (1973); *Butler v. Industrial Commission*, 50 Ariz. 516, 73 P.2d 703 (1937). However, if a worker is compensated for the time spent traveling to and from work, he may be entitled to workmen's compensation benefits. This is upon the theory that by agreeing to pay the employee from the time he leaves home until the time he returns, the employer has agreed that the employment shall be continuous. *See Serrano v. Industrial Commission*, 75 Ariz. 326, 256 P.2d 709 (1953); *Harris v. Industrial Commission*, 72 Ariz. 197, 232 P.2d 846 (1951).

■ Here, pay for travel time was not involved. However, the employer did furnish a pick-up truck and paid for the gas used by the employee while traveling to and from his place of employment, and it is evident from the hearing officer's decision that he considered these facts in and of themselves sufficient to support a finding that the travel time was within the course of his employment. While we agree with the hearing officer's ultimate conclusions, we do not believe that these facts can be considered in isolation. Rather, they must be considered in the total employment setting in order to determine whether the employment can be considered to include the travel itself as a substantial part of the service performed. As stated in *State Compensation Fund v. Kempainen*, 12 Ariz.App. 483, 472 P.2d 94 (1970):

"This exception applies where transportation is furnished the employee at the expense of the employer *and* it is made to appear that the time consumed in going to and coming from work is for the employer's benefit." (Emphasis added). 12 Ariz.App. at 484, 472 P.2d at 95.

*See also, Strauss v. Industrial Commission*, 73 Ariz. 285, 240 P.2d 550 (1952). Certainly when the employer pays for the time

involved, the inference should be conclusive that the travel is included within the course of the employment. *Serrano v. Industrial Commission, supra; Harris v. Industrial Commission, supra;* 1 Larson's Workmen's Compensation Law, § 16.20, p. 4–107. However, when the employer merely pays the expense of the employee's transportation, or provides an auto for business use and permits the employee to use it for going and coming transportation, the total employment picture must be examined, and the furnishing of the automobile by the employer cannot be considered alone.[1] *See Hancock v. Industrial Commission,* 82 Ariz. 107, 309 P.2d 242 (1957); *DuHamell v. Industrial Commission,* 20 Ariz.App. 63, 510 P.2d 62 (1973); *Kriese v. Industrial Commission,* 27 Ariz.App. 318, 554 P.2d 914 (filed July 29, 1976).

In our opinion the total employment picture here involved supports the hearing officer's finding that the travel was within the course of the deceased's employment. The nature of the respondent employer's construction business necessarily required considerable travel by its construction employees moving from location to location, as various construction jobs were completed. This necessity for travel, and generally to live away from the employee's permanent residence, is evidence by the payment by the employer of a subsistence allowance to all permanent salaried employees, including the deceased. In addition, all permanent salaried employees were furnished with pick-ups for use on the job and for travel to and from their lodgings, and in fact the evidence indicates that the deceased was *required* to use the employer furnished pick-up for such travel. We believe that these facts show that here the travel itself was a substantial part of the service which the deceased, as a permanent salaried employee, was performing for his employer, and for which he was

being compensated through the furnishing of the pick-up and related expenses.

We expressly reject petitioner's argument that such an inference is not permissible in this case because of the testimony by supervisory and fellow employees that the workday ended at 3:30 p.m., and that neither the employees nor the employer anticipated that by permitting foremen to drive the pick-up trucks home, the workday was thereby extended. In this connection, we note that we are not confronted with an express agreement as was the case in *Ebasco Services, Inc. v. Bajbek,* 79 Ariz. 89, 284 P.2d 459 (1955).

Having concluded that the deceased would ordinarily have been within the course of his employment during his daily trip home from the construction site, we must now consider whether, on the trip home on the evening in question, he had abandoned or so deviated from his employment as to preclude compensability. The hearing officer's findings which we consider pertinent to this second question were as follows:

"H. On the afternoon of the fatal accident the deceased left the job and on the route to his home in Cottonwood, Arizona he stopped at a bar in McGuireville. He arrived there at 4:30 p.m. with his friend and co-employee, Antonio Frasquillo. The deceased drank one beer on the trip between the job site and the bar at McGuireville. At the bar he drank two beers, played some pool and left at approximately 5:00 p.m. Mr. Mieras was dead at 8:46 p.m. when Officer Wiley Barnes of the Department of Public Safety, arrived at the scene of the accident. An eyewitness places the time of the accident at 8:30 p.m. There is no evidence regarding the deceased's whereabouts or activities during the three hours and thirty minutes between

[1] For the purpose of analysis, there should be no real distinction between the employer's payment of travel expense and the furnishing

of an automobile and gas for the employee's use. *See* 1 Larson's Workmen's Compensation Law, § 16.30, p. 4–112, note 53.

the time he left the bar in McGuireville and the time of the accident.

"I. A blood alcohol test was performed on the deceased and the report of the Arizona Department of Public Safety was that the "chemical analysis of the blood specimen showed it to contain weight by volume ethyl (grain) alcohol" of .16. According to A.R.S. § 28–692 a reading of .10 or over carries a presumption that a driver is incapable of safely operating a motor vehicle.

"J. The fatal accident occurred on State Route 279 at milepost 299.1. The route is, at the milepost, a north-south, two lane roadway. Wherever he had been during the previous three and one half hours—wherever he had driven from at the point of the fatal accident the deceased was on the route that he usually took between the job site and his home."

■ The hearing officer analyzed the deviation issue as follows:

"If the deceased deviated from the route from work to his home, which is an assumption well-supported by the facts, he returned to that route prior to the accident thereby putting him back in the course of his employment. See, 1 Larson's Workmen's Compensation Law, § 19.32."

We disagree in part with this analysis. The question is not simply whether the deceased physically returned to the route he would ordinarily take home. Such a purely mechanical test is not viable under these circumstances. A more logical and relevant line of inquiry here is whether the length of the abandonment and the nature of the activities during the abandonment, *i.e.*, the consumption of alcoholic beverages, precluded effective return to employment and added substantial risks, not otherwise present, to the continuation of the journey.

To this test the degree of intoxication is highly relevant. The deceased's blood alcohol level of .16%, Officer Barnes testified, would in his opinion have been a fac-

tor in causing the fatal automobile accident. He testified that at a blood alcohol level of .10%, one is presumed to be unable to operate a motor vehicle safely. No employment related factors were shown to have contributed to causing the accident. Aside from the necessity for the regular trip home, the deceased's employment related duties clearly ended at 3:30 p.m.

■ The totality of these facts would tend to convince this Court, if it were sitting as a trier of fact, that the deceased had abandoned his employment at the time of his fatal accident. However, as has been stated many times, this Court is not a trier of fact, but must affirm an award of the Industrial Commission if supported by any theory of the evidence. In *Sherrill and La Follette v. Herring*, 78 Ariz. 332, 279 P.2d 907 (1955), in a similar factual setting, the Court, in considering Herring's stop at a bar for one to three hours on his way back to his place of employment, said that that amount of time "would not require the commission as a matter of law to infer that the decedent had abandoned his employment for the return trip over a regular and direct route. The commission is not compelled to say that the employer-employee relationship was completely severed and that the delay in complying with the employer's orders converted the return trip into a pleasure jaunt." 78 Ariz. at 337, 279 P.2d at 910. As to the reasonableness or unreasonableness of the length of the delay, the Court in that case also stated it would not usurp the function of the fact finder. This Court likewise declines to insert its judgment on matters essentially involving factual determinations, where there are not hard and fast rules governing the determination.

In order to say that the deceased's state of intoxication, separate and apart from other factors, compelled a conclusion that he had abandoned his employment, we again would have to usurp the function of the trier of fact and state that as a matter of law, a .16% blood alcohol level would preclude the employee from following his

employment. This is a line of inquiry for the hearing officer to pursue and in this case he specifically found that the deceased had not reached such a level of intoxication as to have been unable to follow his employment. We cannot say that the evidence compelled any other conclusion. *See Embree v. Industrial Commission*, 21 Ariz. App. 411, 520 P.2d 324 (1974); *Ortega v. Ed Horrell & Son*, 89 Ariz. 370, 362 P.2d 744 (1961).

The totality of the facts here were sufficient to support a conclusion that the deceased ordinarily would have been within the course of his employment during travel between work and home. The question of whether he abandoned that employment by delaying the homeward journey for pursuit of personal activities which increased the risks inherent in that journey, involved factual determinations which the hearing officer resolved.

The award is affirmed.

EUBANK, P. J., Department C, and NELSON, J., concur.