584 P.2d 1190

J. D. DUTTON, INC., and State Compensation Fund, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Raymond W. Dyer, Respondent Employee.

No. 1 CA–IC 1827.

Court of Appeals of Arizona, Division 1, Department C.

July 6, 1978.

Rehearing Denied Aug. 4, 1978.

Review Denied Oct. 5, 1978.

Robert K. Park, Chief Counsel, State Compensation Fund, by J. Terence Fox, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Bosco, Goldman & Kaplan, Ltd. by Alan L. Goldman, Phoenix, for respondent employee.

## OPINION

SCHROEDER, Presiding Judge.

The question presented in this special action—Industrial Commission is whether the respondent-employee, Raymond W. Dyer, was in the course and scope of his employment when he was injured in an automobile accident while returning home from work.

Dyer was employed by the petitioner-employer, J. D. Dutton, Inc., as a grade foreman on a highway construction project near Greasewood, Arizona. At the time of the accident, Dyer lived approximately 45 miles from the job site in Holbrook, Arizona. Dyer had been working at the construction site for seven weeks and, on all but three or four days of that time, had been given a ride to and from work by the project supervisor, Rudy Nelson, who also lived in Holbrook.

The drive to and from the project was long and difficult. It regularly took the men more than one hour to travel the distance and much of that time was spent traveling over rough roads. Further, most of the traveling was done in the dark because the men arrived at the site at 5:30 a.m., and due to Nelson's responsibilities as supervisor, often stayed at the site much later than the 3:30 p.m. quitting time.

Nelson, as the project supervisor, was given a daily expense allowance and was assigned a company truck to be used by him for travel to and from work and at the job site. Dutton also assumed all transportation costs and upkeep expenses for the truck. Dyer, however, was not given any type of travel allowance.

On July 15, 1976, Nelson was required to remain at the job site until approximately 8:30 p.m. The evidence indicates that Dyer was driving on this trip, but we do not deem this fact to be determinative of any of the issues before us. On their trip home, a one-car automobile accident occurred and both men were injured. Dyer's injuries were so severe that he was unable to remember any of the incidents leading up to the accident.

Both men filed claims for workmen's compensation benefits. The petitioner-carrier, the State Compensation Fund. accepted Nelson's claim, but denied Dyer's. The carrier found that Nelson, but not Dyer, had been injured in the course and scope of his employment principally because Dutton had furnished Nelson transportation to and from work and had given him a daily expense allowance.

Dyer filed a request for a hearing and a formal hearing was held on April 14, 1977. The only question considered by the hearing officer was whether Dyer was, at the time of the accident, within the course and scope of his employment. John Drew, Dutton's comptroller, testified and the deposition of Rudy Nelson was introduced into evidence at the hearing. Drew explained that it was Dutton's policy to furnish transportation to its construction site supervisors and that these individuals were given "certain latitude" in utilizing the vehicles given to them by Dutton. Drew also stated that Nelson was authorized to take passengers who were employed by Dutton, to and from the job site. Nelson stated that he was given full authority over the truck. The only restriction placed by Dutton on his use of the truck was that it was to be used for work purposes. Nelson also explained that Dyer was one of his best friends, and that had it not been for their friendship, he probably would not have given Dyer the almost daily rides to and from work.

On May 10, 1977, the hearing officer entered an award finding that Dyer had suf-

fered an injury arising out of and in the course of his employment with Dutton. The hearing officer affirmed his decision on review, and this appeal followed.

On appeal, the carrier argues that Dyer is precluded from receiving compensation benefits by the "going and coming rule" which generally regards injuries received while going to or coming from work as occurring outside the course and scope of the employee's employment. *E. g., Pauley v. Industrial Comm'n,* 109 Ariz. 298, 508 P.2d 1160 (1973); *Butler v. Industrial Comm'n,* 50 Ariz. 516, 73 P.2d 703 (1937); *Kerr v. Industrial Comm'n,* 23 Ariz.App. 106, 530 P.2d 1139 (1975). However, as recognized by the hearing officer, there are several exceptions to this rule. One important exception is when the employer furnishes transportation to the employee and it appears that the travel time benefits the employer. *Strauss v. Industrial Comm'n,* 73 Ariz. 285, 240 P.2d 550 (1952); *Fisher Contracting Co. v. Industrial Comm'n,* 27 Ariz. App. 397, 555 P.2d 366 (1976); *State Compensation Fund v. Kempainen,* 12 Ariz.App. 483, 472 P.2d 94 (1970). In such a situation

> "the employer has himself expanded the range of the employment and the attendant risks. He has, in a sense, sent the employee home on a small ambulatory portion of the premises. . . ." 1 Larson, The Law of Workmen's Compensation § 17.10, at 4–129 (1978).

Additionally, providing transportation to an employee may

> "come about as a result of custom and usage, as well as by express contract, as when employees working at some distance from their homes, engage in the known and habitual practice of riding on the employer's trucks." *Id.* § 17.30, at 4–135–36 (footnotes omitted).

*See generally Serrano v. Industrial Comm'n,* 75 Ariz. 326, 256 P.2d 709 (1953); *Kobe v. Industrial Accident Comm'n,* 35 Cal.2d 33, 215 P.2d 736 (1950); *Schademann v. Casey,* 194 Neb. 149, 231 N.W.2d 116 (1975); *Green v. Bell Cleaners,* 65 N.J.Super. 311, 167 A.2d 815, *aff'd,* 35 N.J. 596, 174 A.2d 474 (1961); *Johnston v. Penwell,* 197 Okl. 368, 171 P.2d 266 (1946).

In this case, the hearing officer found that there was an implied agreement by Dutton to furnish transportation to Dyer. The evidence supports that finding. Dutton gave its representative, Nelson, full authority to use the truck provided to him in any manner necessary for the performance of his work. Nelson was also authorized to take co-employees to and from work. Although the carrier emphasizes that Nelson's initial motivation in offering Dyer rides may have been based upon his friendship with Dyer, Nelson was, nevertheless, acting for Dutton and with Dutton's approval when he gave Dyer regular, almost daily rides to work. Nelson's conduct expanded the range of the risks assumed by Dutton in employing Dyer. Thus, as found by the hearing officer, an implied or tacit agreement existed between Dutton and Dyer by which Dutton furnished transportation to Dyer.

The time spent by Nelson and Dyer going to and from work also benefited Dutton. The nature of Dutton's construction business necessarily required considerable travel by supervisory personnel. The trip to and from the construction site was long and arduous. Nelson agreed that having Dyer as a passenger "made it a little bit easier [for him] to get home at night," and that Dyer occasionally drove the truck when Nelson did not feel able to do so. When Dutton authorized Nelson to furnish company transportation for other employees, Dutton implicitly recognized that transportation was a part of its overall concerns on this remote job.

We hold that the hearing officer properly determined that the injuries suffered by Dyer were sustained in the course and scope of his employment and that workmen's compensation benefits were not barred by the "going and coming rule."

The award is affirmed.

WREN and NELSON, JJ., concur.