664 P.2d 690

Stephen M. BROOKS, Benjamin F. Cooley, c/o Linda Cooley, Guardian, Steven M. Kovalcheck (Deceased), Lynda Kovalcheck Haneman (Widow), Karrie Ann Kovalcheck and Cynthia Marie Kovalcheck, Minor Children, William A. Richardson (Deceased), Martha Ann Richardson (Widow), William Lloyd Richardson, Minor Child, Robert J. Kearns (Deceased), Rachel Kearns (Widow), Chris Bradley, Petitioners,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Bechtel Power Corporation, Respondent Employer,

Industrial Indemnity Company, Respondent Carrier.

No. 1 CA–IC 2447.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 24, 1983.

Rehearing Denied Apr. 8, 1983.

Review Denied May 24, 1983.

Ely, Bettini & Ulman by Sam Insana, Phoenix, for Stephen M. Brooks.

Ajamie, Fay & Webb by Louis C. Webb, Phoenix, for Benjamin F. Cooley.

Spencer K. Johnston, Phoenix, for William A. Richardson.

Machmer, Schlosser & Meitz, P.C. by Ronald M. Meitz, Phoenix, for Benjamin F. Cooley.

Fred Creasy, Jr., Phoenix, for Steven M. Kovalcheck.

Ben J. Martin, Scottsdale, for Robert J. Kearns.

James A. Overholt, Chief Counsel, Indus. Com'n of Ariz., Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Donald L. Cross, Larry L. Smith, Phoenix, for respondents employer/carrier.

## OPINION

EUBANK, Judge.

The issue presented in this special action review of an award of the Industrial Commission denying compensability, is whether the administrative law judge correctly denied the peitioners' claims for workmen's compensation benefits on the basis of the "going and coming" rule. In view of the totality of the facts and the law applicable to them, we are of the opinion that the award denying petitioners' claims for benefits is correct. We therefore affirm the award.

The petitioners are surviving workers, or dependents of deceased workers, who were involved in a traffic accident which occurred while the workers were traveling from their homes to their jobs at Palo Verde Nuclear Generating Station. The nuclear plant is being constructed in a relatively undeveloped area some 50 miles west of downtown Phoenix. The prime contractor, respondent employer Bechtel Power Corporation, required the services of skilled workers in the construction of the plant. Bechtel entered into negotiations with the appropriate trade unions, which insisted that provision be made regarding the extensive travel which would be required of their members. Each craft union had previously negotiated separate travel provisions for construction work with employers throughout the state. After extensive negotiation, the bargainers reached a compromise providing that "[i]n lieu of all existing travel or future travel and subsistence payment considerations, the Employer(s) agrees to pay each employee Six Dollars ($6.00) per day worked." This was paid to all workers for each day's work, regardless of actual mileage or other cost.

At approximately 5:45 a.m. on July 10, 1978, a two-vehicle collision occurred at the intersection of Cotton Lane and West McDowell Road in Maricopa County involving the petitioners or their deceased, who were all employees of Bechtel going to work at the plant. Following the accident, the surviving injured workers and the dependents of the deceased workers timely filed claims for workmen's compensation benefits. The respondent carrier, Industrial Indemnity Company, issued notices of claim status denying all of the claims on the basis that the accident neither arose out of nor occurred in the course of employment. All of the petitioners filed requests for hearings and the cases were consolidated for hearing. The administrative law judge entered a consolidated decision upon hearing and findings and award for noncompensable claims. The administrative law judge affirmed his decision on review, and this appeal followed.

■ As a general rule, accidents occurring when an employee is going to or coming from work do not arise out of or occur in the course of employment. *Pauley v. Industrial Commission*, 109 Ariz. 298, 508 P.2d 1160 (1973); *Butler v. Industrial Commission*, 50 Ariz. 516, 73 P.2d 703 (1937); *Knoop v. Industrial Commission*, 121 Ariz. 293, 589 P.2d 1325 (App.1979); 1 Larson, *Larson's Workmen's Compensation Law*, § 15 (1978) [hereinafter referred to as 1

Larson]. On appeal petitioners argue that the accident falls into several exceptions to the "going and coming" rule.

The first of these claimed exceptions is the *travel time* exception. In such cases the employer pays the employee for the time consumed in going and coming to his employment. *Serrano v. Industrial Commission,* 75 Ariz. 326, 256 P.2d 709 (1953); *Strauss v. Industrial Commission,* 73 Ariz. 285, 240 P.2d 550 (1952); 1 Larson, *supra,* § 16.20. We have said regarding this exception, "Certainly when the employer pays for the time involved, the inference should be conclusive that the travel is included within the course of employment." *Fisher Contracting Company v. Industrial Commission,* 27 Ariz.App. 397, 399–400, 555 P.2d 366, 368–69 (1976).

The second exception is related to the travel time exception and may be termed the *substantial benefits* exception. In these cases the employer furnishes transportation or expenses, in lieu thereof, to its employees, and it appears from the facts that the travel time benefits the employer. *J.D. Dutton, Inc. v. Industrial Commission,* 120 Ariz. 199, 584 P.2d 1190 (App.1978); *Fisher Contracting Company v. Industrial Commission, supra; see* 1 Larson, *supra,* § 16.30.

The third exception is known as the *special hazards* exception. *Kerr v. Industrial Commission,* 23 Ariz.App. 106, 530 P.2d 1139 (1975); 1 Larson, *supra,* § 15.13. Although this exception has not been adopted in Arizona, it has been raised unsuccessfully in at least one Arizona case. *See Kerr v. Industrial Commission, supra.* This exception imposes workmen's compensation liability upon employers for injuries which occur from travel on the only or, at least, the normal route from the employee's home to the employer's premises, where "special hazards of that route become the hazards of the employment." 1 Larson, *supra,* § 15.13, pp. 4–18.

Turning to the first exception, petitioners vigorously contend that the $6.00 per day "in lieu" figure represents payment for time expended in travel. The administrative law judge, however, found that the $6.00 figure represented only reimbursement for the expenses of traveling and not payment for travel time. This finding is fully supported by a summarization of the evidence in findings of fact 18 through 25 of the award.

It is well established that in workmen's compensation proceedings the Industrial Commission sits as the trier of fact. *Malinski v. Industrial Commission,* 103 Ariz. 213, 439 P.2d 485 (1968); *DuHamell v. Industrial Commission,* 20 Ariz.App. 63, 510 P.2d 62 (1973). As the trier of fact, it is for the Commission to draw inferences from the evidence, and where several inferences may be drawn, the drawing of the inference is exclusively the province of the Commission. *See Harrington v. Industrial Commission,* 84 Ariz. 356, 328 P.2d 311 (1958). Determining whether the $6.00 per diem was to reimburse travel expenses or to pay for travel time is a fact question for the Commission to resolve, and the conclusions drawn will not be set aside unless there is no reasonable basis for the determination. *Kerr v. Industrial Commission, supra.* Having reviewed the record, it is our opinion that there is substantial evidence to support the Commission's finding.

Petitioners argue, however, that *Serrano v. Industrial Commission,* 75 Ariz. 326, 256 P.2d 709 (1953), requires that the award be set aside because factually the instant case and *Serrano* are the same. We disagree. In *Serrano* our supreme court set aside the award of the commission which denied compensation to an employee who was injured while driving home to Kingman from work at Davis Dam. The court noted that the employer had contracted "[t]o pay to each employee, as an allowance for travel and subsistence expense, and in lieu of any other provision for travel or subsistence, . . . an amount equal to one hour's pay at such employees' straight time rate for each day worked by such employee, . . . " 75 Ariz. at 328, 256 P.2d at 710; that the reason for this extra pay was that "[t]he job was not set up with housing, board or lodging"; and that *Kobe v. Industrial Accident Commission,* 35 Cal.2d 33, 215 P.2d 736 (1950) stated

the "well established exception" to the going and coming rule that the employer "may agree, either expressly or impliedly, that the relationship shall continue during the period of 'going and coming', in which case the employee is entitled to protection of the act during that period." 35 Cal.2d at 35, 215 P.2d at 35, 215 P.2d at 737. *Kobe* was also cited for the basis of establishing an inferred agreement as follows:

> Such an agreement may be inferred from the fact that the employer furnishes transportation to and from work as an incident of the employment. (Citations omitted). It seems equally clear that such an agreement may also be inferred from the fact that the employer compensates the employee for the time consumed in traveling to and from work.

*Id.* at 35, 215 P.2d at 737.

Based on the facts established by the award, the supreme court in *Serrano* found, as a matter of law, that an inferred agreement existed whereby the employer agreed to compensate the injured employee in "going" to his home in Kingman after work. The court said:

> It will be observed that the order of the Construction Industry Stabilization Commission did not fix one hour as a definite limit of time to go to and from work so that the injury must have occurred within any nine-hour period. *What the board actually did was to fix an amount of travel pay 'equal to one hour's pay' at such employee's straight time rate for each day worked by such employee. That amount was as much a part of his daily wage as the $1.77 he received per hour while actually working on the job.* (Emphasis added).

75 Ariz. at 331, 256 P.2d at 711–12. The opinion's *ratio decidendi* was that since the accident occurred within a nine-hour period, for which the injured employee received wages for working, and since his injury occurred during that nine-hour period, his injury arose out of and in the course of his employment by virtue of the implied agreement [1] and within the exception of the going and coming rule.

*Serrano* was decided as a matter of law. The case *sub judice* involves a question of fact. In *Kerr v. Industrial Commission, supra,* the injured employee was paid $7.00 per diem or $35.00 per week for "motel, food, and travel expenses," and he was paid this amount regardless of expense or distance traveled. We said:

> Mr. Kerr urges that a per diem payment to him evidences the fact that the travel to and from his permanent residence was considered to be part of his employment. Payment of a per diem allowance for travel may evidence an intention to include travel time as part of the course of employment. *Serrano v. Industrial Commission,* 75 Ariz. 326, 256 P.2d 709 (1953); 1 Larson, § 16.09 at 4–86. However, determining whether the per diem was a subsidy for travel or merely a different form of compensation is a fact question for the Commission to resolve and the conclusions drawn will not be set aside unless there is no reasonable basis for the determination. *Valerio v. Industrial Commission,* 85 Ariz. 189, 334 P.2d 768 (1959); *Sloan v. Industrial Commission,* 14 Ariz.App. 354, 483 P.2d 586 (1971).

23 Ariz.App. at 108, 530 P.2d at 1141. In *Kerr* we affirmed the award denying compensation, stating:

> We are of the opinion that reasonable evidence existed for the hearing officer to conclude that the employer did not provide travel expenses for going to or from the jobside and that Mr. Kerr's journey home was not a part of his service in the course of his employment.

23 Ariz.App. at 109, 530 P.2d at 1142.

The per diem payment in *Kerr* is very similar to the "in lieu" payment in the instant case. Neither payment involves the extra hours pay relied on by the supreme

---

1. *See Ebasco Services v. Bajbek,* 79 Ariz. 89, 284 P.2d 459 (1955), where the same judges split three to two on whether the employer and union could contract that such payments for employee travel were not covered by workmen's compensation. The majority held that they could so contract.

court in *Serrano* as the element on which they inferred an agreement by law. Thus, the issue here as in *Kerr* is one of fact. As noted above, the finding that petitioners were paid expense reimbursement is substantially supported by the record.[2]

The finding that the Bechtel employees were paid "travel expense reimbursement" rather than "travel time" shifts the analysis away from a conclusive inference of employer liability to one of examining the "total employment picture" in this case. *Fisher Contracting Company v. Industrial Commission, supra.* Claimed exceptions to "going and coming" rule cases must be reviewed on a case-by-case determination of each particular fact situation. *Strauss v. Industrial Commission, supra.*

Examining the total employment picture, we turn to petitioners' next argument, relating to benefits inuring to Bechtel for its furnishing of travel expense reimbursement to its employees. Without question, Bechtel received some benefit from the travel allowance agreement. Petitioners point out that respondents entered into the agreement primarily to obtain qualified union workers who would be required to travel long distances from their homes in north Phoenix to the job site in order to work at their trade. Bechtel also benefited by avoiding the need to furnish housing to employees at or near the job site. These "benefits" are supported by the record and are uncontroverted by the respondents. The real question, however, is whether these "benefits" are legally sufficient to satisfy the substantial benefits exception to the going and coming rule. We agree with the administrative law judge's determination that they are not.

In Arizona, the substantial benefits exception to the going and coming rule has been approved within narrow parameters. First, our courts have recognized the substantial benefit exception only in cases where the employer furnished transportation to its employees or supervisory personnel. *See J.D. Dutton, Inc. v. Industrial Commission, supra; Fisher Contracting Company v. Industrial Commission, supra; Strauss v. Industrial Commission, supra.* In *Fisher* the furnishing of a pickup truck to the employee, coupled with evidence that he was *required* to use the truck for going and coming travel was considered significant in the total employment picture. There we concluded, in part, that "the travel itself was a substantial part of the service which the deceased, as a permanent salaried employee, was performing for his employer, and for which he was being compensated through the furnishing of the pick-up and related expenses." 27 Ariz. App. at 400, 555 P.2d at 369. Second, distance alone is not the determinative fact. *Kerr v. Industrial Commission, infra.*

Turning to the case at hand, the administrative law judge found that even if the respondent had furnished transportation to its employees, the benefits accruing to Bechtel must be for some particular benefit, such as where the employee is required to work extra hours, or where he is on twenty-four hour call. *See Strauss v. Industrial Commission, supra.* The record establishes that neither Bechtel nor the unions desired overtime work at the job site. The mere fact that the $6.00 per diem rate was a bargained for benefit to respondents, therefore, does not invoke a recognized exception to the going and coming rule.[3] The record

---

2. Although not directly applicable to workmen's compensation law, tort cases parallel these cases. *See State v. Superior Court, In & For County of Maricopa,* 111 Ariz. 130, 524 P.2d 951 (1974); *Robarge v. Bechtel Power Corp.,* 131 Ariz. 280, 640 P.2d 211 (App.1982).

3. We recognize the existence of a number of cases from outside this jurisdiction which have applied a much broader benefits rule than the one to which we adhere. *See* 1 Larson's, *supra,* § 16.30. Employer liability has been ex-

tended in cases where the subject of transportation was "singled out for special consideration," particularly where the transportation expense reimbursement was held out as an inducement to accept employment. *Id.* at 4–160 to 4–173. However, even this expansive language has been subjected to factual limitations. Noteworthy is the New Jersey Supreme Court decision in *Ricciardi v. Aniero Concrete Co. Inc.,* 64 N.J. 60, 312 A.2d 139 (1973) which found that "all or substantially all" of the employee's commuting expenses must be provided

in fact establishes that the $6.00 in lieu payment was a flat rate, paid to each employee covered by the agreement regardless of the distance or the cost of an employee traveling to and from the job.

■ Petitioners' final contention that the special hazard exception is applicable is unsupported by the record. As we noted earlier, the special hazard exception has never been adopted as law in Arizona. However, we considered it in *Kerr v. Industrial Commission,* 23 Ariz.App. 106, 530 P.2d 1139 (1975), where we rejected the argument to include a 400-mile trip between the employee's permanent residence and the remote job site on the basis of the special hazard exception. The decision was based on two grounds. First, we held that distance alone is not a basis for an exception to the going and coming rule. Second, we determined that "the hazards, if any, which he [the employee] would encounter in traveling from his home to the work site are not distinguishable from those 'risks [which] are shared with members of the general public.'" *Id.* at 108, 530 P.2d at 1141, *citing, Rencehausen v. Western Greyhound Lines,* 8 Ariz.App. 184, 186, 444 P.2d 741, 743 (1968).

The record *sub judice* establishes multiple routes from metropolitan Phoenix to the Palo Verde job site. Although the record shows that a "funneling" effect did occur as traffic approached the plant during peak periods of shift changes, the administrative law judge found that the accident did not occur in the funneling area, and that, therefore, the risks incurred by petitioners and their decedents were no greater than those

incurred by the general public during a "rush hour." The record supports this conclusion.

It is our opinion that the administrative law judge's findings that the workers' deaths and injuries were not compensible because of the "going and coming" rule is supported in the law and by the record.

The award is affirmed.

HAIRE, J., concurs.

CONTRERAS, Chief Judge, dissenting:

The majority, in affirming this award, has concluded that the administrative law judge's findings that the workers' death and injuries were not compensable because of the "going and coming" rule is supported by the law and by the record. I strongly disagree. Petitioners have posited several exceptions to the "going and coming" rule which the majority has designated as (1) the travel time exception, (2) the substantial benefits exception, and (3) the special hazards exception. In my opinion, both the law and the record support the "substantial benefits" exception to the going and coming rule. I would set aside the award.

The majority has selected the term "substantial" as it relates to "benefits." The parties in their written briefs before this court have used the terms "special" and "significant", rather than "substantial", in reference to "benefits." I shall follow the term selected by the majority with the understanding that in this case there is no substantive difference between these terms.

The administrative law judge found that the $6.00[1] per diem paid to each worker

---

by the employer in order for the trip to be considered a part of the employment. The Virginia Supreme Court addressed a related issue in *GATX Tank Erection Co. v. Gnewuch,* 221 Va. 600, 272 S.E.2d 200 (Va.1980), wherein the employer paid its employees $6.00 per day to encourage "operating engineers to accept the inconvenience of going to distant job sites." *Id.* 272 S.E.2d at 202. Since the amounts paid did not reflect the *actual* expense of commuting to the job site, the court refused to allow an exception to the going and coming rule.

Petitioners also cite a line of Montana cases illustrated by the latest *Gordon v. H.C. Smith*

*Construction Co.,* 612 P.2d 668 (Mont.1980), which rely on 1 Larson, § 16.30, where distance alone is determinative. Petitioner cites a number of cases in the reply brief illustrated by *Westinghouse Electric Corp. v. Department of Labor and Industries,* 25 Wash.App. 103, 604 P.2d 1334, *affirmed,* 94 Wash.2d 875, 621 P.2d 147 (1980) which treat the issue as one of law instead of fact. On the basis of our analysis of *Serrano, supra,* we reject those cases.

1. The amount of payment was subject to review. It was subsequently increased to $11.00 and is subject to future review.

represented reimbursement for the expenses of traveling and not payment for travel time. I have no quarrel with this finding and believe that it was supported by substantial evidence. The majority states that since we are concerned with "travel expense reimbursement" rather than "travel time", any further analysis shifts "... from a conclusive inference of employer liability to one of examining the 'total employment picture' in this case." I agree.

The majority also recognizes that "[c]laimed exceptions to 'going and coming' rule cases must be reviewed on a case-by-case determination of each particular fact situation." Again, I agree. It is with the ensuing analysis and conclusion that I disagree. In my opinion, an examination of the "total employment picture", together with applicable law, clearly demonstrates that the substantial benefits exception applies to the case presently before us.

The petitioners contend that the employer specially benefited in several respects from the worker travel time. Originally the employer had refused to make any sort of travel payment to the workers, but was forced to reach a compromise and pay $6 per day for travel allowance in order to induce qualified, skilled workers from the various crafts to travel the long distances from their homes to the job site. It was also established that many workers quit or complained because of the long distances required to travel to the power plant construction site, and that many workers computed their "work day" including time consumed in travel to and from the construction site to be 12 to 14 hours a day, only 8 of which constituted actual work hours at the power plant.

It is also undisputed that Bechtel benefited from the travel because it did not have to provide housing at or near the construction site. In my opinion, these "benefits" are substantial and legally sufficient to satisfy the second element of the subject exception to the going and coming rule. As stated in 1 A. Larson, Workmen's Compensation Law, § 16.30, at 4–159 to 4–172:

[I]n the majority of cases involving a deliberate and substantial payment for the expense of travel, or the provision of an automobile under the employee's control, the journey is held to be in the course of employment. This result is usually correct, because when the subject of transportation is singled out for special consideration it is normally because the transportation involves a considerable distance, and therefore qualifies under the rule herein suggested: that employment should be deemed to include travel when the travel itself is a substantial part of the service performed.

The sheer size of the journey is frequently the principal fact supporting this conclusion, as in the successful cases involving trips of eight miles, 20 miles, 22 miles, 30 miles, 50 miles, 54 miles, 60 miles, 120 miles, and 130 miles.

The record shows that the construction site for the power plant is located 50 miles west of downtown Phoenix. It is uncontested that the workers commonly faced a round-trip travel each day of approximately 100 miles or more. It is also clear from the record that the travel allowance was an inducement to the union-represented workers to reach an agreement with Bechtel. Indeed, it appears that there would have been no agreement absent the provision on travel allowance.

In my opinion, the Arizona decisions also support petitioners' position. In *J.D. Dutton, Inc. v. Industrial Commission*, 120 Ariz. 199, 584 P.2d 1190 (Ct.App.1978), the injured worker was employed by the employer at a construction project approximately 45 miles from the worker's home. The worker had, on all but a few occasions, been given a ride both to and from the work site by the project supervisor who lived in the same town. The court stated:

The time spent by Nelson and Dyer going to and from work also benefited Dutton. The nature of Dutton's construction business necessarily required considerable travel by supervisory personnel. The trip to and from the construction site was long and ardous. Nelson

agreed that having Dyer as a passenger "made it a little bit easier [for him] to get home at night," and that Dyer occasionally drove the truck when Nelson did not feel able to do so. When Dutton authorized Nelson to furnish company transportation for other employees, Dutton implicitly recognized that transportation was a part of its overall concerns on this remote job.

120 Ariz. at 201, 584 P.2d at 1192. The court went on to hold that the hearing officer had properly determined that the injuries were sustained in the course and scope of employment and came within an exception to the going and coming rule.[2]

Although *Serrano v. Industrial Commission*, 75 Ariz. 326, 256 P.2d 709 (1953), is not controlling authority since, strictly speaking, it involved payment for "travel time", it nevertheless contains some indication as to when travel becomes part of the job. In *Serrano*, the worker was employed at the Davis Dam construction project in northwest Arizona. The closest living accommodations were in Kingman, Arizona, and the workers had to travel from 32 to 35 miles a day going to and from the job. The court stated:

> There having been no housing, board or lodging accommodations provided for employees at or near the Dam where the work was being done it was necessary that these employees reside where such accommodations could be obtained. Kingman was the closest point to the job where such accommodations were available. As stated by the witness Wallace that was the primary reason for allowing the travel pay. Therefore in order for petitioner to perform his work on the job he had to travel to and from Kingman which was certainly incidental to the work done on the job. His travel between Kingman and the Dam did not only fall within the category of what he

may reasonably do but it was as much a part of his employment as the actual work on the job. It was within the time, the place and the circumstances of his employment, and the cause producing the accident had its source within the employment and in a risk inherent therein, to wit, the hazard of traveling to and from his job to the only available living accommodations.

75 Ariz. at 330–31, 256 P.2d at 711.

In the present case, it is clear from the record that the employer provided no housing or other living accommodations at or near the nuclear plant construction site. It also appears that there was no existing housing available to the employees near the construction site, thereby necessitating that all employees drive a considerable distance to and from work, a distance which we note was considerably further than that present in *Serrano, supra.*

I also note that other jurisdictions have found a substantial benefit to the employer from worker travel sufficient to justify compensability in similar situations. *Westinghouse Electric Corp. v. Department of Labor and Industries*, 25 Wash.App. 103, 604 P.2d 1334 (1980); *Gordon v. H.C. Smith Construction Co.*, 612 P.2d 668 (Mont.1980); *McMillen v. Arthur G. McKee & Co.*, 165 Mont. 462, 166 Mont. 400, 533 P.2d 1095 (Mont.1975); *Jensen v. Manning & Brown, Inc.*, 63 Wyo. 88, 178 P.2d 897 (Wyo.1947).

In *Westinghouse*, the worker stayed at or near the job site at Grand Coulee Dam throughout the week, but returned to his home on the weekends. The distance between the job site and the home was approximately 100 miles. Under the negotiated union contract, the worker was paid $15 per day travel allowance. The Washington court stated:

> The fact that Allyn stayed in Coulee City during the week and drove home only on

2. *See also Fisher Contracting Co. v. Industrial Commission*, 27 Ariz.App. 397, 555 P.2d 366 (1976), wherein the court held that the total employment picture supported the hearing officer's finding that the travel was within the course of the deceased's employment. The court relied upon the facts that considerable travel was required by the job of the construction employees and that all permanent salaried employees were furnished with pickups and required to use the pickups in their travel.

weekends does not change the nature of the contract nor the fact that the travel was an integral part of his employment. . . . The travel allowance was an inducement for the worker to travel to a distant jobsite which was a mutual benefit to both employer and employee. . . . 25 Wash.App. at 107, 604 P.2d at 1337.

In examining the "total employment picture", it is also my opinion that the workers' travel here is different from that of other commuters. First, the distance involved here is much greater than the average commuting trip. Second, the workers here involved were induced, and would not have agreed, to work at the plant unless some arrangement for travel expenses was made by the employer. Third, there was no housing provided at the project construction site by the employer, nor was there any available nearby. The nature of the nuclear plant made it necessary that the plant be constructed in a remote area, and this meant that all of the construction workers at the plant were required to travel a great distance to and from work every day.

A further matter which gives me some concern in viewing the "total employment picture" is the absence of any provision in the Stabilization Agreement avoiding worker's compensation coverage for the travel. Indeed, it appears from the record that the negotiators for both labor and the corporation did not discuss or consider the effect of the travel allowance provision upon worker's compensation coverage for the travel to and from the plant. In my opinion, the petitioners need not show an intention to extend workmen's compensation coverage to the travel; rather, it is the respondents who must show an express agreement avoiding coverage for the travel. This an employer can do. *Ebasco Services v. Bajbek,* 79 Ariz. 89, 284 P.2d 459 (1955); *see also Fisher Contracting Co. v. Industrial Commission,* 27 Ariz.App. 397, 555 P.2d 366 (1976).

I have examined the "total employment picture" in this case. I have also examined pertinent Arizona decisions bearing on the questions presented. I have also examined similar cases from other jurisdictions. Based upon this examination, together with the omnipresent consideration that the purpose of workmen's compensation is remedial and that the provisions should be construed liberally so as to effectuate the purposes of the Workmen's Compensation Act, *Van Nelson v. Industrial Commission,* 134 Ariz. 369, 656 P.2d 1230 (1982), I conclude that the substantial benefits exception to the general going and coming rule applies to the case presently before us. I would set aside the award which denied compensability.