847 P.2d 1131

**CRYSTAL BOTTLED WATERS,**
**Petitioner Employer,**

**McKesson Corporation, c/o Crawford**
**and Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION**
**OF ARIZONA, Respondent,**

**Richard Lopez, Respondent Employee.**

**No. 1 CA–IC 91–0139.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 21, 1993.

Reconsideration Denied March 23, 1993.

Joseph L. Moore, Ltd. by Joseph L. Moore, Phoenix, for petitioners employer and carrier.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Taylor & Associates by Thomas R. Stillwell, Phoenix, for respondent employee.

OPINION

TOCI, Judge.

This is a review of an award for permanent partial disability. In finding that the employee suffered lost-earning capacity based upon work as a light-duty delivery driver, the administrative law judge ("ALJ") rejected the uncontradicted opinion of petitioners' vocational expert that higher-paying work as a limousine driver would be suitable and affirmatively found that such work would be unsuitable. We hold that: (1) the ALJ may properly disregard a vocational expert's uncontradicted opinion that certain work is suitable for claimant and (2) the ALJ properly inferred from the evidence that limousine work was unsuitable employment for claimant.

## FACTUAL AND PROCEDURAL BACKGROUND

While working as a route driver for petitioner employer, a bottled water company, respondent employee ("claimant") injured his back. When the claimant's back injury became stationary, his doctor released him to full-time work subject to certain limitations. These limitations prohibited him from lifting anything over fifty pounds and allowed him to only occasionally lift objects between eleven and fifty pounds.

Each party had a vocational expert testify about suitable work for the claimant. Both experts agreed that the claimant could work as a light-duty delivery driver and that such work was reasonably available to the claimant. In addition, although claimant's expert did not consider whether claimant was employable in any other positions, petitioners' expert concluded that claimant could work at a higher rate of pay as a limousine driver.

On cross-examination, however, claimant's attorney raised the issue whether the job of a limousine driver required claimant to lift in excess of the limitations prescribed by claimant's doctor. Petitioners' expert then conceded that limousine drivers must handle luggage as part of their employment. Nevertheless, the expert contended that this duty would be unlikely to restrict the claimant because he would receive assistance from bellmen and skycaps and, "the way people travel nowadays," he would not have to lift or carry in excess of his limitations. Although the petitioners' expert also testified that he had actually placed injured workers as limousine drivers and that his surveys indicated that employers would hire claimant despite his limitations, he acknowledged that he did not know whether any of these employers had ever hired a disabled worker.

After considering this evidence, the ALJ issued an award for lost-earning capacity. The ALJ based the award on the claimant's ability to work as a light-duty delivery driver. Regarding the suitability of work as a limousine driver, the ALJ stated:

Although ... [petitioners' expert] minimized the assertion that limousine driv-
ers would be required to handle luggage as part of the job, the undersigned is not bound by this testimony. *See Le Duc v. Industrial Comm'n,* 116 Ariz. 95, 567 P.2d 1224 (App.1977). As noted by the court in *Le Duc,* the type of evidence presented by employment experts is not so completely outside the understanding of an average layman that a contrary conclusion cannot be reached. *It is the finding of the undersigned that the limousine position would not be suitable to applicant's physical limitations.*

(Emphasis supplied.) When the ALJ affirmed on administrative review, the petitioners brought this special action. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–120.21(A) and Rule 10, Rules of Procedure for Special Actions.

## DISCUSSION

Petitioners argue that the ALJ must accept their vocational expert's uncontradicted and unimpeached evidence that the claimant can work as a limousine driver. We disagree. Unlike an uncontradicted medical opinion, which the ALJ must accept, *Revles v. Industrial Comm'n,* 88 Ariz. 67, 74, 352 P.2d 759, 764 (1960), the ALJ may reject the uncontradicted opinion of a vocational expert. *Le Duc v. Industrial Comm'n,* 116 Ariz. at 98, 567 P.2d at 1227 (App.1977). We also conclude that the ALJ had a reasonable basis for finding that limousine driving was unsuitable employment for claimant.

In *Le Duc,* this court addressed the sufficiency of the evidence supporting an award finding that the claimant had an earning capacity as a waitress. The claimant relied on a vocational expert, who testified that the claimant was unemployable as a waitress. The employer and carrier did not present contrary expert opinion. Instead, they relied on various labor market surveys completed by a graduate student. The claimant argued that the trier of fact had to accept the uncontradicted opinion of the vocational expert. We rejected this contention, stating: "As with most expert opinions, the trier of fact is entitled to consider

it, but give it only the weight to which he deems it entitled." *Id.* at 98, 567 P.2d at 1227.

▪ Here, the petitioners' vocational expert testified that the claimant could work as a limousine driver because such employment met the test of suitability and availability. In other words, employment as a limousine driver was available and the claimant could reasonably be expected to be able to perform such work. *See Macias v. Industrial Comm'n*, 139 Ariz. 182, 677 P.2d 1290 (1984); *Roach v. Industrial Comm'n*, 137 Ariz. 510, 672 P.2d 175 (1983); *Zimmerman v. Industrial Comm'n*, 137 Ariz. 578, 672 P.2d 922 (1983). Satisfying this test, however, establishes only the legal sufficiency of an expert's opinion; it does not establish that the opinion is conclusive, even in the absence of contrary expert opinion as to suitability and availability of employment. Although the claimant's vocational expert never contradicted such evidence, the lack of controverting evidence does not prevent the ALJ from considering petitioners' expert evidence and giving it "the weight to which he deems it entitled." *Le Duc*, 116 at 98, 567 P.2d at 1227. Accordingly, the ALJ could properly conclude that the expert's opinion was entitled to no weight and thus entirely reject it.

The petitioners also argue that the ALJ's finding that work as a limousine driver would be unsuitable for claimant was not supported by the record. The petitioners assert that because the claimant did not controvert petitioners' expert's testimony that limousine driving was suitable, the ALJ was bound by this evidence and could not make a finding that limousine driving was unsuitable without relying upon evidence outside the record. The petitioners argue that the ALJ, in the face of undisputed evidence of suitability, must have taken judicial notice that the lifting requirements

of limousine driving would exceed the claimant's physical restrictions. According to petitioners, the ALJ erred because judicial notice cannot be taken of a disputed fact. We disagree with petitioners' argument.

▪ First, petitioners' argument relies upon an invalid premise that the ALJ was bound by the uncontroverted testimony of petitioners' expert that limousine driving was suitable employment for claimant. We held above that the ALJ was free to accept or reject the uncontroverted testimony of petitioners' vocational expert. Because petitioners failed to persuade the ALJ that limousine work was suitable employment, the ALJ properly rejected petitioners' expert opinion on this point. While the ALJ may accept or reject the opinion of petitioners' expert, however, he may not make an affirmative finding of unsuitability, absent supporting evidence in the record. In other words, the ALJ may not rely upon judicial notice of a disputed fact or personal knowledge [1] to supply essential evidentiary facts.

Second, although the ALJ may not affirmatively find unsuitability without supporting evidence in the record, we conclude that such evidence exists here. While the petitioners' expert testified that the claimant, despite his lifting restrictions, could work as a limousine driver, petitioners' expert also conceded that limousine drivers must handle luggage. Petitioners' expert attempted to minimize this fact by testifying that people today generally travel without much luggage and that the claimant would receive assistance from bellmen and skycaps. The petitioners' expert, however, never conclusively established that the claimant's employment as a limousine driver would not violate his lifting restrictions. Furthermore, although the petitioners' expert testified that "very often" limousine drivers have assistance at hotels and airports in unloading luggage, the ALJ could

---

1. Larson states:

A commission's expert knowledge and experience may be put to use in two different ways—one improper and the other proper—which are sometimes difficult to distinguish. The improper use is the nonrecord supplying of essential evidentiary facts ...; the other is the supplying of *judgment* in the form of weighing and even rejection of expert testimony by checking it against the commission's own cumulative experience.

2B Arthur Larson, § 79.62 at 15–426.272(6)–(8), (11).

infer from this testimony that such assistance was not always available at hotels and airports and never available in other locations. Thus, a reasonable inference from petitioners' expert's testimony was that limousine driving was not suitable to claimant's physical limitations. *See Brooks v. Industrial Comm'n,* 136 Ariz. 146, 664 P.2d 690 (App.1983) (where several inferences may be drawn from the evidence, the drawing of any one inference is the exclusive privilege of the ALJ). The conclusions of the ALJ will not be set aside unless there is no reasonable basis for the determination. *Id.* We conclude that there is a reasonable basis for the ALJ's finding that limousine driving was unsuitable employment for claimant.

## CONCLUSION

In order to establish that claimant could work at a higher rate of pay than the rate of pay earned by a light-duty delivery driver, petitioners had to prove that limousine driving was suitable employment for claimant. Because petitioners failed to persuade the ALJ that limousine work was suitable employment, the ALJ properly rejected petitioners' expert's opinion on this point and found that limousine driving was not suitable employment for claimant.

GERBER, P.J., and EHRLICH, J., concur.